UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-MJ-03278-JJO-1

In Re: Sealed Search Warrant and
Application for a Warrant
_____/

**TIME-SENSITIVE MOTION OF OPTIMA FAMILY COMPANIES,
MORDECHAI KORF, URIEL LABER, AND CHAIM SHOCHET TO
PROHIBIT LAW ENFORCEMENT REVIEW OF SEIZED MATERIALS
UNTIL AN APPROPRIATE PROCEDURE FOR REVIEW
OF PRIVILEGED ITEMS IS ESTABLISHED**

This time-sensitive motion challenges the government's use of a "filter team" – consisting of federal prosecutors and federal law enforcement agents – as part of a search warrant protocol to review seized materials for privilege before the seized materials are released to the prosecution team.

On Tuesday, August 4, 2020, federal agents executed a search warrant at the Miami and Cleveland offices of various corporate entities, (including entities identified as the "Optima Family Companies" at Attachment B.3 to the warrant), affiliated with several Ukrainian nationals, including Ihor Kolomoisky and Gennadiy Boholiubov, as well as American citizens Mordechai Korf, Uriel Laber, and Chaim Shochet, (the "Movants").[1] For approximately twelve years, at least four attorneys and three paralegals worked "in-house" out of the Miami office and provided legal services to many of the so-called Optima Family Companies and individuals. The agents seized, among other things, legal memo pads, physical documents and computers containing information protected by the attorney-client

_____

[1] The Movants include all such companies listed in Attachment B.3 to the search warrant with the exception of Optima Specialty Steel, Kentucky Electric Steel, Corey Steel Company, Michigan Seamless Tube, LLC, Georgian Manganese, LLC, Vartisikhe 2005, LLC, Optima Harvard Facility LLC and Optima Stemmons, LLC.

and work-product privileges.   In that respect, the search was the functional equivalent of a law office search.

These so-called Optima Family Companies and individuals respectfully object to any review by law enforcement of privileged materials.  Accordingly, the Optima Family Companies and individuals respectfully request that the Court tailor the protocol for segregating privileged documents – *i.e.,* modify the procedure set forth in the warrant – to preclude such review.  Specifically, federal law enforcement should be precluded from rummaging through what could be years' worth of privileged documents and communications with in-house (and outside) counsel, and the rights at issue should be protected and preserved by way of an appropriately structured protocol to segregate privileged documents.

## FACTUAL BACKGROUND

On July 31, 2020, the government applied for and this Court issued a search warrant to seize items from the offices of the so-called Optima Family Companies located at 200 S. Biscayne Boulevard, Suite 5500, Miami, Florida, 33131. *See* Ex. 1 (Jul. 31, 2020, Warrant Application).

The warrant contains a section entitled "Filter for Privileged Materials," which provides as follows:

> **Filter for Privileged Materials:** If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of government attorneys and agents is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will review all seized communications and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team and the investigative team may resume its review. If the filter team decides that any of the communications to/from attorneys are not actually privileged (e.g., the

<u>communication includes a third party or the crime-fraud exception applies), the filter team must obtain a court order before providing these attorney communications to the investigative team.</u>

*Id.* at B.2, ¶ 3.

The protocol permits a "filter team" of law enforcement attorneys and agents to review **<u>all</u>** of the seized documents, unilaterally determine whether a particular document even implicates the attorney-client or work-product privilege, release to the investigative team (without court intervention) those documents that the filter team unilaterally determines do not implicate a privilege, and then seek a court order before any potentially privileged documents are provided to the investigative team. Such a protocol ensures law enforcement review of privileged materials and fails to adequately protect these sacred privileges.

The protocol also only allows for judicial review if a communication is clearly sent "to/from attorneys." This limited exception for judicial review is inadequate, because: (1) the substance of the privileged information is initially exposed to filter-prosecutors prior to judicial review; and (2) the scope of the documents subject to judicial review is underinclusive. More specifically, the scope of the documents subject to judicial review is underinclusive because the protocol: (1) does not account for the existence of documents subject to the work product doctrine, including compilations of documents prepared by attorneys in anticipation of litigation; and (2) does not account for the existence of communications between non-lawyers reasonably necessary for the transmission of attorney-client communication. Rule 26(b)(3)(A) of the Federal Rules of Evidence makes it abundantly clear, with respect to the work product doctrine, that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

agent)." The search warrant's filter process also assumes that filter-prosecutors are able to identify all persons who are attorneys. The government may be planning to search using "keywords" for lawyer names and to produce the remainder of the documents that do not hit on the "keywords," <u>without reviewing them for privilege</u>. If the government does not review all of the documents produced to the investigative team, there is a clear risk that privileged documents, including work product, will be produced. Ultimately, only the privilege holders are in a position to accurately identify their privileged materials, not filter-prosecutors who necessarily have incomplete information and are very likely to produce privileged documents, including work product, to investigating-prosecutors.

On August 4, 2020, the government executed the warrant. During the search, law enforcement seized documents and equipment, including internal servers containing electronic documents and correspondence.

At various times over the past twelve years, four in-house lawyers worked for the relevant Optima Family Companies at this office. *See generally* Declaration of Daniela Rost ("Rost Dec."). For example, attorneys Daniela Rost, Robert Powell, Thad Florence, and Julia Kim performed legal work for various Optima Family Companies and individuals, including Korf, Laber and Shochet. *See id.* at ¶¶ 2-7. Throughout the years, the office also employed paralegals. *See id.* at ¶ 8. Mr. Powell, Mr. Florence and Ms. Kim are no longer affiliated with these entities, but Ms. Rost was present in her private office on the date of the search. *See id.* at ¶ 9. Ms. Rost verbally informed the agents that day, and again in writing the following day, that the government had seized documents from her office and from the open space outside her office that were protected from disclosure by the attorney-client and/or work product privileges. *See id.* Moreover, the electronic data that was seized also contains privileged communications involving the relevant Optima Family Companies as well as the individuals. *See id.* at ¶¶ 9-12.

The threat of the government's review of privileged documents is particularly acute because on May 21, 2019, PrivatBank initiated a lawsuit in the Court of Chancery of Delaware against Mordechai Korf, Uriel Laber, and Chaim Schochet, as well as various Optima Family Companies. *See Joint Stock Co. Comm. Bank Privatbank v. Igor Valeryevich Kolomoisky*, Del. Ch., C.A. No. 2019-0377-JRS (May 21, 2019, Compl.). The transactions and occurrences at issue in the Delaware case overlap entirely with and are substantively identical to the factual predicate for the grand jury investigation pursuant to which the search warrant issued. *See* Ex. 2, (May 21, 2019, Del. Ch. Compl.). Korf, Laber, and Schochet, as well as the relevant Optima Family Companies, have been litigating this Delaware case now for over a year. Because the transactions and occurrences at issue in Delaware overlap entirely with and are substantively identical to the factual predicate for the grand jury investigation, there is a clear risk that the government will intrude upon work product privileges, including work product emails and communications exchanged amongst the non-lawyer privilege holders in connection with the civil lawsuit in Delaware. Simply put, there is a clear risk that the government will be able to view a roadmap to the privilege-holders defenses by reviewing work product generated as a result of the Delaware action and exchanged amongst non-lawyers. In-house lawyer Daniela Rost, for example, has been actively involved in collating documents and assisting with the defense in that case, and her emails were seized and are subject to review. *See* Rost Dec. at ¶ 10. That is not to mention work product generated by and exchanged between non-lawyers.

On August 6, 2020, counsel for Korf and Laber sent an email to the government, "assert[ing] the attorney-client and work-product privileges on behalf of these entities and individuals" and noting that "for more than ten years, attorneys Daniela Rost and Robert Powell had their workspaces within Suite 5500 in Miami and did legal work for these various entities and individuals . . . . For the avoidance

of doubt, we object to the use of a filter team.  *See In re Grand Jury Subpoenas*, 454
F.3d 511 (6th Cir. 2006); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159
(4th Cir. 2019)." Ex. 3 (Aug. 6, 2020, M. Kasowitz Email).

That same day, August 6, 2020, the government responded in pertinent part
as follows:

> The filter team will review all seized materials and segregate
> communications to or from attorneys, which may or may not be subject
> to attorney-client privilege. At no time will the filter team advise the
> investigative team of the substance of any of the communications to or
> from attorneys.
>
> After reviewing the materials, the filter team then will provide all
> communications that do not involve an attorney to the investigative
> team and the investigative team may resume its review of those items.
> If the filter team believes that any of the communications to or from
> attorneys may not actually be privileged (e.g., the communication
> includes a third party or the crime-fraud exception applies), the filter
> team will contact you or obtain a court order before providing these
> attorney communications to the investigative team.

Ex. 4 (Aug. 6, 2020, AUSA Letter). The Assistant United States Attorney overseeing
the review of privileged documents for the filter team works for the same office
overseeing the grand jury investigation.

On August 12, 2020, counsel for Korf and Laber sent a follow up letter, again
"objecting to the government's use of a filter team to review seized materials
protected by the attorney-client and/or work product privileges." Ex. 5 (Aug. 12,
2020, M. Kasowitz Letter). The letter "respectfully disagree[d] with the
government's position," noted that counsel does not "believe the filter procedures []
described are adequate," and requested that the government "not review any of the
seized materials pending the Court's determination of this issue." *Id.* The letter
further put the government on notice that counsel for Korf and Laber would be filing

the instant motion "challenging the government's use of a filter team to review the seized materials." *Id.*

## LEGAL STANDARD

A motion for return of property pursuant Rule 41(g) while no criminal proceeding is pending is "a civil proceeding for equitable relief." *United States v. Potes Ramirez*, 260 F.3d 1310, 1313 (11th Cir. 2001); *see also United States v. Madden*, 95 F.3d 38, 39 n. 1 (10th Cir. 1996) (agreeing with its "sister circuits" that because there was no criminal proceeding pending against the defendant, motion for return of property was a civil proceeding); *United States v. Garcia*, 65 F.3d 17, 18 n. 2 (4th Cir. 1995) ("We agree with those circuits that have held that a motion for return of property, at least where no criminal proceedings are pending, is a civil action against the United States.") (citations omitted). The Movants seek return of a copy of the materials seized so that Movants may perform a privilege review while no criminal proceeding is pending, and therefore this is a civil proceeding for equitable relief in which a preliminary injunction may be granted. *See, e.g., In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) (granting preliminary injunctive relief in identical context).

The relevant Optima Family Companies and individuals seek an injunction to prohibit law enforcement from reviewing the seized materials until a protocol more protective of the privileges is ordered. The four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted are: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest. *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014); *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995).

## ARGUMENT

## I. THE "FILTER TEAM" PROCESS WILL CAUSE IRREPERABLE HARM AND IS LEGALLY FLAWED

### A. Prosecutorial Intrusion into the Substance of Privileged Materials Causes Irreparable Injury that Cannot Be Undone

Although cases often discuss irreparable injury second, the "showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal citations and quotations omitted). Accordingly, for purposes of this motion, irreparable harm is analyzed first, because it is fundamental to the grant of injunctive relief.

The Supreme Court has held that, as a matter of law, the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate. *See, e.g., Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (the denial of constitutional rights for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction) (collecting cases); *Gayle v. Meade*, No. 20-21553-CIV, 2020 WL 3041326, at *20 (S.D. Fla. June 6, 2020) (citing *Elrod*).

"Notably, the attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel." *In re Search Warrant*, 942 F.3d at 174. "For example, in assessing the interplay between the attorney-client privilege and the Sixth Amendment, . . . the essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel." *In re Search Warrant*, 942 F.3d at 174 (internal citations and quotations omitted); *see United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983) (holding that "a communication between an attorney and his client

that is protected by the common law attorney-client privilege is also protected from government intrusion by the sixth amendment"). "Absent privacy of communications and the 'full and frank' discussions that flow therefrom, a lawyer could be deprived of the information necessary to prepare and present his client's defense." *In re Search Warrant*, 942 F.3d at 174.

"Similarly, the work-product doctrine fulfills an essential and important role in ensuring the Sixth Amendment right to effective assistance of counsel." *Id.* "The Supreme Court has recognized that the work-product doctrine is vital to 'assur[e] the proper functioning of the criminal justice system,' in that it 'provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case.'" *Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238). "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *Nobles*, 422 U.S. at 238. "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.* "Without that privileged area, a lawyer's ability to plan and present his client's defense will be impaired." *In re Search Warrant*, 942 F.3d at 174 (internal quotations omitted).

The conclusion that a prosecutorial "filter team" is adequate to protect these interests "afford[s] insignificant weight to the foregoing principles protecting attorney-client relationships." *Id.* at 175. Crucially, the "filter team" procedure "fail[s] to recognize that an adverse party's review of privileged materials seriously injures the privilege holder." *In re Search Warrant*, 942 F.3d at 175; *see Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960-61 (3d Cir. 1984) (ruling that law firm had demonstrated likelihood of irreparable harm where government seized thousands of files containing privileged information); *Blasco*, 702 F.2d at 1329;

*United States v. Abbell*, 914 F. Supp. 519, 520 (S.D. Fla. 1995) (in criminal prosecution in which large volume of documents and computer generated data was seized from lawyers, special master would be appointed, at government expense, to determine whether documents and data were protected from disclosure because of attorney client, work product, or other applicable privileges).

Separate and apart from the deprivation of constitutional rights, irreparable injury may also occur when privileged information is improperly revealed because "courts cannot always 'unring the bell' once the information has been released." *Maness v. Meyers*, 419 U.S. 449, 460 (1975); *see Blasco*, 702 F.2d at 1329; *In re Grand Jury Proceedings*, 601 F.2d 162, 169 (5th Cir. 1979).

Although there are very few appellate precedents to guide disputes over the use of "filter teams," the decision of the Fourth Circuit in *In re Search Warrant Issued*, 942 F.3d 159, is instructive. "When the pertinent legal principles are properly applied to the unrefuted evidence," it is clear that review by the prosecutorial "filter team" of materials seized from their targets "is injurious." *In re Search Warrant*, 942 F.3d at 175. "And that harm is plainly irreparable, in that the Filter Team's review of those privileged materials cannot be undone," and the relevant Optima Family Companies and individuals "will be irreparably harmed absent an award of injunctive relief against the Filter Team and its Protocol." *In re Search Warrant*, 942 F.3d at 175; *Blasco*, 702 F.2d at 1329.

### B. Movants are Likely to Succeed in Establishing that the "Filter Team" and Its Protocol are Legally Flawed and that an Alternative Mechanism is Appropriate

In order to prevail on the "likelihood of success" factor, the movants must "clearly establish[]" that the "filter team" and its protocol are legally flawed. *Siegel*, 234 F.3d at 1176; *In re Search Warrant*, 942 F.3d at 176. Stated differently, the movants are "obliged to demonstrate [that they are] likely to succeed on [their

request that the magistrate judge or a special master]— rather than the Filter Team
— perform the privilege review of the seized materials." *In re Search Warrant*, 942
F.3d at 176.

Federal courts have generally "taken a skeptical view of the Government's
use of 'taint teams' as an appropriate method for determining whether seized or
subpoenaed records are protected by the attorney-client privilege." *United States v.
SDI Future Health, Inc.*, 464 F. Supp. 2d, 1027, 1037 (D. Nev. 2006).[2] "[T]aint
teams present inevitable, and reasonably foreseeable, risks to privilege." *In re Grand
Jury Subpoenas*, 454 F.3d at 523. The Government's taint team may "have a more
restrictive view of privilege" than the defense. *Id.* In addition, the Government's
conflicting interests in both preserving privilege and pursuing the investigation
present inherent risks. *See id.* Taint teams "have been implicated in the past in leaks
of confidential information to prosecutors." *Id.* (citing *Noriega,* 764 F. Supp. 1480).
And even if no leaks occur, the use of walled-off taint teams undermines the
appearance of fairness and justice. *See In re Search Warrant for Law Offices
Executed on March 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994); *United States v.
Stewart*, No. 02 CR. 395 JGK, 2002 WL 1300059, at *8 (S.D.N.Y. June 11, 2002).
"It is a great leap of faith to expect that members of the general public would believe"

---

[2]     Although the use of "taint teams" or "filter teams" has been tolerated in limited factual
scenarios, the analysis is often performed after the fact, based on lack of evidence of actual
prejudice *at trial*. For example, the cases cited by AUSA Kall in the letter attached as Exhibit 4,
purportedly in support of the use of "taint teams" or "filter teams," are inapposite for these exact
reasons. *See, e.g., United States v. Coffman*, 574 F. App'x 541, 564 (6th Cir. 2014) (taint process
was reviewed under the invited error doctrine because the defendant agreed to process before it
occurred, court made factual finding of crime-fraud exception, and case was argued as to lack of
prejudice at trial); *United States v. Warshak*, 631 F.3d 266, 293 (6th Cir. 2010) (government had
already reviewed privileged materials, and court's analysis was post-trial, based on lack of
evidence of direct or derivative use of privileged information at trial). Only a handful of cases have
analyzed the legality of these procedures *a priori*, following an adversarial process conducted at
the outset.

that a wall separating members of the taint team from members of the prosecution "would be impenetrable." *In re Search Warrant*, 153 F.R.D. at 59.

Instances in which the government fails to adequately safeguard privileges through a "filter team" or "taint team" continue to occur, and have occurred as recently as April 2020. *See, e.g., United States v. Sullivan*, No. CR 17-00104 JMS-KJM, 2020 WL 1815220, at *8 (D. Haw. Apr. 9, 2020) ("[T]he court entrusted the United States with a unique responsibility to ensure that any and all privileged material seized pursuant to the iCloud warrant was not provided to the prosecution team. And in this task, the United States failed."); *United States v. Elbaz*, 396 F. Supp. 3d 583, 589 (D. Md. 2019) (government's filter team improperly disclosed thousands of potentially privileged documents to a prosecution team, which then examined some of the documents); *United States v. Esformes*, No. 16-20549-CR, 2018 WL 5919517, at *20 (S.D. Fla. Nov. 13, 2018) (prosecution team improperly reviewed materials from search before "taint" attorneys had reviewed the materials, despite assertions of defendant's privilege); *United States v. Pedersen*, No. 3:12-CR-00431-HA, 2014 WL 3871197, at *27 (D. Or. Aug. 6, 2014) (prosecutors failed to notify defense or court for months that prosecution team had reviewed target's legal mail); *Noriega*, 764 F. Supp. at 1489 (Noriega's conversations with his defense team were not recognized as such by outside screeners and DEA agents performing review and prosecutors were exposed to privileged conversations).

As further explained below, the movants are likely to succeed on the merits of their challenge to the filter team and its protocol because: (1) the United States Attorney's Office, (a prosecuting agency of the executive), should not be delegated the judicial role of reviewing its prosecutorial targets' privileged documents and adjudicating the existence of legal privileges; (2) the procedure for segregating privileged documents by way of a "filter team" should not be authorized *ex parte*, but instead privilege holders should be afforded the opportunity to engage the

adversarial process and inform the Court's exercise of its judicial discretion; and (3) the procedure to segregate privileged documents should account for foundational principles that protect attorney-client relationships. *See In re Search Warrant*, 942 F.3d at 176.

### 1. The United States Attorney's Office Should Not Be Delegated the Judicial Role of Adjudicating the Existence of Legal Privileges

The "filter team" protocol set forth in the search warrant "err[s] in assigning judicial functions to the executive branch." *Id.* "[W]hen a dispute arises as to whether a lawyer's communications or a lawyer's documents are protected by the attorney-client privilege or work-product doctrine, the resolution of that dispute is a judicial function." *Id.* "Indeed, the Constitution vests '[t]he judicial Power' solely in the federal courts, *see* U.S. Const. art. III, § 1, which includes 'the duty of interpreting and applying' the law, *see Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)." *Id.* "Put simply, a court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute." *Id.* The search warrant's "filter team" protocol "erroneously authorize[s] the executive branch — that is, the Filter Team — to make decisions on attorney-client privilege and the work-product doctrine . . . a court simply cannot delegate its responsibility to decide privilege issues to another government branch." *In re Search Warrant,* 942 F.3d at 177. No matter what hat they wear, federal prosecutors' principal job is to prosecute crimes, not to adjudicate the existence of legal privileges.

Moreover, as Judge Boggs writing for the Sixth Circuit aptly explained, a filter team might "have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and . . . some [filter] team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that [filter] teams pose a serious risk to holders of privilege." *In re Grand Jury*

*Subpoenas*, 454 F.3d at 523. A prosecutor who sees an incriminating privileged communication during a filter-team review cannot unsee it. When federal prosecutors review thousands of seized emails, including those indisputably seized from the possession of in-house counsel, the risks are intolerable.

In such circumstances, the Court itself or a special master should review the seized documents to evaluate claims of privilege and any exceptions to privilege. *See Abbell*, 914 F. Supp. at 519-20; *accord Stewart*, 2002 WL 1300059, at *7. In addition to avoiding separation of powers issues, this provides two key safeguards: (1) it protects the attorney-client privilege and guards against exposure to prosecutorial adversaries; and (2) more fundamentally, it protects the clients' Sixth Amendment rights to a fair trial and the effective assistance of counsel, including the assistance of in-house counsel. Simply put, the function of the judiciary to adjudicate legal privileges cannot be properly (or securely) delegated to a prosecuting agency of the executive branch, especially where such delegation will result in prosecutors reviewing <u>all</u> privileged communications between in-house counsel and prosecutorial targets.

### 2. Privilege Holders Must Have an Opportunity to Participate in an Adversarial Process to Inform the Court's Judicial Discretion, <u>Prior</u> to Determination of a Procedure for Segregating Privileged Documents

Adversarial proceedings regarding the appropriate filter protocol should be held <u>before</u> the filter team begins reviewing the material. *In re Search Warrant*, 942 F.3d at 178–79. This is prudent given that an improper "taint team" or "filter team" protocol threatens irreparable harm to the attorney-client privilege, which is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v.*

*Bauer,* 132 F.3d 504, 510 (9th Cir. 1997). The process for deciding the appropriate filter process was flawed for all of the following reasons:

<u>*First*</u>, "the timing of the authorization of the filter protocol" was contemporaneous with the issuance of the search warrant, which "undermined the [Court's] ability to exercise discretion with respect to the Filter Team and its Protocol, in that the [Court] could not have been fully informed of what was seized." *In re Search Warrant*, 942 F.3d at 178. It is unclear to Movants the extent to which the Court was aware of the number and involvement of in-house counsel in this matter. The Court "may well have rejected the Filter Team and its Protocol" if it had known that in-house lawyers working at the offices of the relevant Optima Family Companies would have all their documents and communications seized, and that the government intended to review through all such legal documents and communications on its own. *Id.*

<u>*Second*</u>, the Court should decline "the government's *ex parte* invitation with respect to the Filter Team," and instead the Court should "conduct[] adversarial proceedings on whether to authorize the Filter Team and the Filter Protocol." *Id.* "In such contested proceedings," the Court could be "fully informed of the relevant background on the [office and its in-house lawyers], as well as the nature of the seized materials." *Id.* at 179. "Additionally, the clients . . . and their lawyers could [be] heard by the judge." *Id.*

### 3. The Procedure to Segregate Privileged Documents Should Account for Foundational Principles that Protect Attorney-Client Relationships

The filter protocol contained in the search warrant should have been based on the weighing of "important legal principles that protect attorney-client relationships." *In re Search Warrant*, 942 F.3d at 179. The current protocol permits "government agents and prosecutors" to engage in "an extensive review of client

communications and lawyer discussions," which is "in disregard of the attorney-client privilege, the work-product doctrine, and the Sixth Amendment." *Id.*

### 4. In These Circumstances, the Court or a Special Master Must Perform Privilege Review of the Seized Materials

Because in-house counsel's documents and communications were seized, and because in-house counsel have actively provided legal advice to the relevant Optima Family Companies and related individuals for over 10 years, "in these circumstances, . . . the Court (or an appointed special master) — rather than the Filter Team — must perform the privilege review of the seized materials." *In re Search Warrant*, 942 F.3d at 181; *see Abbell*, 914 F. Supp. at 519-20; *accord Stewart*, 2002 WL 1300059, at *7.

### C.  The Balance of the Equities Weighs in Favor of the Privilege Holders

"The government should have been fully aware that use of a filter team in these circumstances was ripe for substantial legal challenges and should have anticipated that those challenges could delay its investigations." *In re Search Warrant*, 942 F.3d at 181-82. Potential delay to the government does not outweigh the irreparable injury to the attorney-client relationships caused by the improper "filter team" procedure. *See In re Search Warrant*, 942 F.3d at 182 (citing *In re Grand Jury Subpoenas*, 454 F.3d at 523-24); *Abbell*, 914 F. Supp. at 519-20.

### D.  The Public Interest Weighs in Favor of the Privilege Holders

"[A]n award of injunctive relief in these circumstances supports the 'strong public interest' in the integrity of the judicial system." *In re Search Warrant*, 942 F.3d at 182 (citing *United States v. Hasting*, 461 U.S. 499, 527(1983) (Brennan, J., concurring in part and dissenting in part)). By creating appearances of unfairness as to the intrusion into privileged documents and communications of in-house counsel, the filter team and its protocol contravenes the public interest. *See In re Search Warrant*, 942 F.3d at 182; *Gallego*, 2018 WL 4257967, at *2 (recognizing

appearances of unfairness inherent in use of filter teams and appointing special master to review materials seized from law firm); *Stewart*, 2002 WL 1300059, at *8 (explaining that "it is important that the procedure adopted [for the review of seized materials] . . . not only be fair but also appear to be fair").

For those who rely on their in-house counsel for legal advice — and to the public at large — it surely appears, as the Sixth Circuit recognized, that "the government's fox [has been] left in charge of the [attorney-client] henhouse.'" *In re Search Warrant*, 942 F.3d at 182 (citing *In re Grand Jury Subpoenas*, 454 F.3d at 523); *see also In re Search Warrant for Law Offices Executed on Mar. 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) ("It is a great leap of faith to expect that members of the general public would believe any . . . wall [between a filter team and a prosecution team] would be impenetrable; this notwithstanding our own trust in the honor of an AUSA.").

## II. THE PROCEDURE PROPOSED BY THE PRIVILEGE HOLDERS IS REASONABLE, CAUSES NO PREJUDICE TO THE GOVERNMENT, AND ADEQUATELY PROTECTS THE LEGAL INTERESTS AT STAKE

The procedure for segregating privileged documents proposed by the movants is reasonable and will adequately safeguard the important legal interests at stake:

*First*, the government should be required to immediately return an electronic copy of the seized documents to counsel for the privilege holders for their review;

*Second*, counsel for the privilege holders should then be granted 45 days within which to identify privileged documents. The government should be immediately precluded from reviewing seized documents pending completion of the 45-day review period;

*Third*, as to those items for which there is an assertion of privilege, counsel for the privilege holders should be required to submit a privilege log at the end of the 45-day period. The government must return and/or destroy copies of the

privileged documents. To the extent that the government challenges any assertion of privilege, the documents may be reviewed by the Court *in camera*, and the Court may then adjudicate the existence of valid legal privileges.

This sort of procedure is routinely used in litigation and accords with the fundamental tenet that it is the Court and/or a neutral third party that reviews privileged documents *in camera* and renders decisions as to the existence of valid legal privileges. This procedure will cause no prejudice to the government, because it will be able to satisfy itself that a neutral court or third-party special master has reviewed the documents and adjudicated the existence of valid legal privileges. It will however protect the privilege holders' legal rights and their attorney-client relationships from undue intrusion by prosecutorial adversaries.

## III. WHILE THE ADVERSARY PROCESS WITH RESPECT TO THE APPROPRIATE PROCEDURE FOR SEGREGATING PRIVILEGED DOCUMENTS IS BEING ADJUDICATED, THE COURT SHOULD PRESERVE THE STATUS QUO

As noted in section II, *supra*, the government should be immediately precluded from further reviewing the seized documents, while the procedure for segregating privileged documents is still being adjudicated. The Court should expeditiously enjoin the government from performing any further review of the seized documents, while the procedure to segregate privilege is being litigated for the same reasons set forth in section I, *supra*.

### CONCLUSION

The Sixth Amendment's guarantee of effective assistance of counsel requires that privileged documents be safeguarded from prosecutorial adversaries. And separation of powers principles preclude delegation of the judiciary's function to determine the existence of legal privileges to executive prosecuting agencies. That principle of non-delegation is even more applicable where the same prosecutorial

agency investigating targets by way of a criminal grand jury is also seeking to act as a quasi-judicial authority, intruding into targets confidential communications with their attorneys, and irreparably interfering with the proper functioning of attorney-client relationships.

The procedure proposed by the movants is reasonable and appropriate because: (1) it protects the attorney-client privilege and guards against exposure to prosecutorial adversaries; and (2) more fundamentally, it protects the clients' Sixth Amendment rights to a fair trial and the effective assistance of counsel, including the assistance of in-house counsel. Even if no leaks occur, the use of walled-off taint teams undermines the appearance of fairness and justice. The procedure proposed herein will cause no prejudice to the government, but will preserve the appearance of fairness and justice, and will safeguard attorney-client confidences and relationships. Injunctive relief should be granted to appropriately structure the process for reviewing privileged documents.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Movants hereby request a hearing on this motion because of the substantial legal issues raised herein, the importance of the rights at stake, and the utility of discussing the factual nuances of the case in order to adequately inform this Court's exercise of discretion in tailoring an appropriate procedure for segregating privileged documents. Counsel for the Movants anticipates that argument on the instant motion should not require more than an hour.

Respectfully submitted,

Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
Fax: (305) 371-6322

By:   /s/ Howard M. Srebnick
Howard M. Srebnick
Florida Bar No. 919063
Robert T. Dunlap
Florida Bar No. 11950
HSrebnick@RoyBlack.com
RDunlap@RoyBlack.com

*Attorneys for Movants Mordechai Korf and Optima Family Companies*

Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Marc E. Kasowitz
Mark P. Ressler
Ronald R. Rossi
Sarmad M. Khojasteh
Joshua Paul
*Pro Hac Vice Anticipated*
MKasowitz@kasowitz.com
MRessler@kasowitz.com
RRossi@kasowitz.com
SKhojasteh@kasowitz.com
JPaul@kasowitz.com

*Attorneys for Movants Mordechai Korf,*
*Uriel Laber, Optima Family Companies and*
*Chaim Shochet*


By:    */s/ Scott A. Srebnick*
       Scott A. Srebnick, P.A.
       201 South Biscayne Boulevard
       Suite 1210
       Miami, FL 33131
       Telephone: (305) 285-9019
       Facsimile: (305) 377-9937
       Scott@srebnicklaw.com
       *Attorney for Movant Uriel Laber*