UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-MJ-03278-O'SULLIVAN

In Re: Sealed Search Warrant

and Application for a Warrant

_____/

## ORDER

THIS MATTER is before the Court on the Time-Sensitive Motion of Optima Family Companies, Mordechai Korf, Uriel Laber, and Chaim Shochet to Prohibit Law Enforcement Review of Seized Materials until an Appropriate Procedure for Review of Privileged Items is Established (DE# 4, 8/17/20) (hereinafter "Motion"). The Court allowed Mordechai Korf, Uriel Laber, Chaim Shochet and the Optima Family Companies[1] (collectively, "movants") to intervene in the instant proceedings on August 19, 2020. See Order (DE# 10, 8/19/20).

## BACKGROUND

On July 31, 2020, the undersigned issued a search warrant to be executed at the Miami offices of some of the entities which comprise the Optima Family Companies. See Search Warrant (DE# 4-1, 8/17/20).[2]

---

[1] The movants define the "Optima Family Companies" as those entities "listed in Attachment B.3 to the search warrant" excluding "Optima Specialty Steel, Kentucky Electric Steel, Corey Steel Company, Michigan Seamless Tube, LLC, Georgian Manganese, LLC, Vartisikhe 2005, LLC, Optima Harvard Facility LLC and Optima Stemmons, LLC." Mordechai Korf, Uriel Laber, Chaim Shochet and the Optima Family Companies' Motion to Intervene (DE# 3 at 1 n.1, 8/17/20).

[2] The government obtained a separate search warrant for the Cleveland offices of some of the movants. Response at 3. This Order pertains only to the Miami search warrant. The Court does not have jurisdiction over the Ohio search warrant and any review of

Attachment B.2 of the search warrant contained the following review protocol:

3. **Filter for Privileged Materials**: If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of government attorneys and agents is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will review all seized communications and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team and the investigative team may resume its review. If the filter team decides that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes third party or the crime-fraud exception applies), the filter team must obtain a court order before providing these attorney communications to the investigative team.

Search Warrant (DE# 4-1 at 8, 8/17/20).[3]

On August 4, 2020, the government executed the search warrant at the Miami offices of some of the movants. Motion at 4; Declaration of Daniela Rost (DE# 4-6 at ¶3, 8/17/20). In-house counsel, Daniela Rost, maintains an office at this location and "[t]he office . . . has a team of paralegals." Declaration of Daniela Rost (DE# 4-6 at ¶¶ 3, 8, 8/17/20). The materials from other in-house attorneys who have worked out of this office in the past [are] also stored at this location. Id. at ¶¶ 5-8.

The law firm of Roche Cyrulnik Freedman LLP (hereinafter "RCF" or "outside counsel"), subleases office space at this location and "serves as outside counsel to some of the entities listed in the search warrant." Declaration of Devin "Velvel" Freedman (DE# 12-3 at ¶¶ 4-5, 9/2/20).

_____

documents seized pursuant to the Cleveland search warrant will not be done in the Southern District of Florida.

[3] The search warrant itself remains under seal as part of an ongoing criminal investigation. In this Order, the Court cites to only those portions of the search warrant which were disclosed in the parties' public filings.

"RCF is actively representing the Movants in a civil action [brought by PrivatBank] in Delaware . . . which alleges, among other things, violations of the Racketeer Influenced and Corrupt Organizations Act" (hereinafter "Delaware litigation"). Reply at 3.

On August 6, 2020, the government initiated two civil forfeiture actions in the Southern District of Florida which relate to "assets that facilitated, were involved in, and are traceable to an international conspiracy to launder money embezzled and fraudulently obtained from PrivatBank." See Verified Complaint for Forfeiture in Rem (DE# 1 at ¶1 in Case Nos. 20-cv-23278-MGC and 20-cv-23279-RNS, 8/6/20). According to the movants, "[t]he transactions, occurrences, and allegations at issue in the Delaware litigation are the same transactions and allegations the Government made in [the] two . . . civil forfeiture actions . . . . ." Reply at 3.

During the execution of the search warrant on August 4, 2020, the government seized numerous items from the Miami offices including documents, binders, notepads, shipping invoices, hard drives, flash drives, computers, laptops and disks. See Inventory of Miami Search (DE# 11-1, 8/28/20).[4] The parties do not dispute that some of the

---

[4] The government states that of the 85 categories of items seized, three boxes of materials came from in-house counsel's office and one box of materials came from the space subleased by RCF. Reply at 2, 4-5. At the September 18, 2020 hearing, the government advised the Court that it provided the materials in these three boxes, without the filter team reviewing or copying them, to the movants and the movants are conducting a privilege review of those materials. The box of materials that came from the space subleased by RCF has been returned to RCF. RCF has reviewed the materials and has determined that the materials in the box belonged to the Optima companies. The government has issued a subpoena to the Optima companies and in response to that subpoena, RCF will be returning the box to the government. See Order (DE# 19, 9/18/20).

items seized during the search are at least potentially privileged. Id.; Response at 2 (acknowledging that "some documents seized likely will be privileged," but maintaining that "the vast majority will not.").

On August 17, 2020, the movants moved to intervene in this proceeding[5] and filed the instant Motion "object[ing] to any review by law enforcement of privileged materials." Motion at 2.

On August 19, 2020, the Court held a status hearing wherein it allowed the movants to intervene in the instant proceeding and set a briefing schedule. See Order (DE# 10, 8/19/20).

Pursuant to the Court's briefing schedule, the government filed its response in opposition to the instant Motion on August 28, 2020. See United States' Response to Motion of Optima Family of Companies, Mordechai Korf, Uriel Laber, and Chaim Shochet to Prohibit Review of Seized Materials (DE# 11, 8/28/20) (hereinafter "Response"). The movants filed their reply on September 2, 2020. See Movants' Reply in Support of Motion to Prohibit Review of Seized Materials Until an Appropriate Procedure for Review of Privileged Items is Established (DE# 12, 9/2/20) (hereinafter "Reply").

At the Court's direction, the parties have conferred regarding the issues raised in the instant Motion. Response at 6. Despite multiple discussions, the parties have not been able to agree on a privilege review protocol. See Response at 5-6, 18-20; Reply at 10-11.

---

[5] See Mordechai Korf, Uriel Laber, Chaim Shochet and the Optima Family Companies' Motion to Intervene (DE# 3, 8/17/20).

On September 17, 2020, the movants filed a status report concerning the documents they have received thus far from the government (52,034 pages in the first batch and 157,850 pages in the second batch) which they are in the process of reviewing for privilege. See Movants' Status Report (DE# 17, 9/17/20).

On the same day, RCF filed a motion to intervene and for other relief based on the government's search of RCF's work area during the execution of the search warrant. See Roche Cyrulnik Freedman LLP's Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 14, 9/17/20) (hereinafter "RCF's Motion").[6] The movants have joined in RCF's Motion. See Movants' Joinder in [ECF# 14] Roche Cyrulnik Freedman LLP's Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 16, 9/17/20) (hereinafter "Movants' Motion for Joinder"); Order (DE# 19, 9/18/20).

On September 18, 2020, the Court held a hearing on the instant Motion. At the hearing, counsel for the movants represented to the Court that the movants anticipate a large volume of emails regarding the Delaware litigation will be designated privileged. It was also established that the government has returned the seized items belonging to in-house counsel and RCF. Thus, as it pertains to the instant Motion, the issue before this Court is what the protocol should be for the privilege review of the items seized from the remaining (non-attorney) areas of the Miami offices.

This matter is ripe for consideration.

## **STANDARD OF REVIEW**

The movants "seek an injunction to prohibit law enforcement from reviewing the

---

[6] The Court has set a briefing schedule on RCF's Motion, see Order (DE# 19, 9/18/20), and will rule on RCF's motion once the issues have been briefed.

seized materials until a protocol more protective of the privileges is ordered." Motion at 7.

A preliminary injunction may be granted only if the moving party establishes four factors: (1) a substantial likelihood of success on the merits; (2) an immediate and irreparable injury absent injunctive relief; (3) a threatened harm to the movant that outweighs any injury the injunction would cause to the non-movant and (4) the injunction will not disserve the public interest. Carillon Imps. v. Frank Pesce Int'l Grp. Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted).

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to the four requisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

## ANALYSIS

**A.     Injunctive Relief**

**1.     Likelihood of Success on the Merits**

The movants argue that they have established a likelihood of success on the merits. The movants raise numerous concerns with the filter team protocol set forth in the search warrant. The movants note that under the filter team protocol, the filter team improperly engages in the judicial function of adjudicating legal privileges. Motion at 14 (noting that "the function of the judiciary to adjudicate legal privileges cannot be properly (or securely) delegated to a prosecuting agency of the executive branch, especially where such delegation will result in prosecutors reviewing all privileged communications

between in-house counsel and prosecutorial targets.").

The movants further argue that because the Court authorized the filter team protocol prior to the search, the Court did not know the nature of the items which would ultimately be seized. Motion at 15 (positing that "[t]he Court may well have rejected the Filter Team and its Protocol if it had known that in-house lawyers working at the offices of the relevant Optima Family Companies would have all their documents and communications seized, and that the government intended to review through all such legal documents and communications on its own") (internal quotation marks omitted).[7] Relatedly, the movants take issue with the fact that the movants did not have the opportunity to raise their concerns prior to the Court's authorization of the filter team protocol. Id.

The movants also argue that the filter team protocol is flawed because it fails to account for "'important legal principles that protect attorney-client relationships'" by "permit[ting] 'government agents and prosecutors' to engage in 'an extensive review of client communications and lawyer discussions,' which is 'in disregard of the attorney client privilege, the work-product doctrine, and the Sixth Amendment.'" Id. at 15-16 (quoting In re Search Warrant, 942 F.3d at 179).

The government maintains that the movants cannot show a substantial likelihood of success on the merits because the filter team protocol set forth in the search warrant is standard procedure. See Response at 1 (stating that the filter team protocol outlined in the search warrant is "standard, considered practice—approved by the Department of

---

[7]  As noted above, the government has since returned the materials taken from the work areas used by in-house counsel and outside counsel.

Justice and by numerous courts—for the efficient and careful exclusion of privileged materials from the fruits of a search and seizure warrant executed at business offices."); id. at 9 (stating that "filter teams are a time-tested solution to the complex problem of reviewing voluminous records without investigators uncovering privileged materials or imposing massive costs on the court or the government."). The government argues that the risks identified by the movants, such as the potential for inadvertent disclosure of privileged materials is "unfounded" and that "courts begin with the 'expectation and presumption that the Government's privilege team and the trial prosecutors will conduct themselves with integrity.'" Id. at 8-9 (quoting In re Ingram, 915 F. Supp. 2d 761, 765 (E.D. La. 2012)).

The government further argues that the use of a filter team does not "usurp judicial authority" because filter teams "operate under the court's direction, and they are guided by instructions of the court (in this case, via the warrant, and any subsequent orders)." Response at 10. The government also argues that the movants' complaint about the ex parte manner in which the filter team protocol was authorized is moot because the movants have now presented their objections to the filter team protocol to the Court. Response at 11.

At the outset, the Court rejects the movant's argument that the use of government filter teams to conduct privilege reviews is per se legally flawed. Filter teams have been employed to conduct privilege reviews in numerous cases. See, e.g., In re Ingram, 915 F. Supp. 2d 761, 764 (E.D. La. 2012) (noting that "several U.S. District Courts . . . have approved the use of government filter teams."); In re Search of 5444 Westheimer Rd. Suite 1570, Houston, Texas, on May 4, 2006, No. H-06-238, 2006 WL

1881370, at *3 (S.D. Tex. July 6, 2006) (noting that "[o]ther courts have upheld the use of taint team procedures.").

Rather than being disruptive, some courts have viewed the use of filter teams as being protective of privileges: where "the potentially-privileged documents are already in the government's possession . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." In re Grand Jury Subpoenas, 454 F.3d 511, 523 (6th Cir. 2006); see also United States v. Grant, No. 04 CR 207BSJ, 2004 WL 1171258, at *2 (S.D.N.Y. May 25, 2004) ("not[ing] that a review of the documents by a privilege team of Assistant United States Attorneys would not waive Defendant's attorney-client privilege. A waiver is defined as the intentional relinquishment of a known right."); United States v. Triumph Capital Grp., Inc., 211 F.R.D. 31, 43 (D. Conn. 2002) (stating that "[t]he use of a taint team is a proper, fair and acceptable method of protecting privileged communications when a search involves property of an attorney"); In re Ingram, 915 F. Supp. 2d at 765 (noting that the government's proposed filter team protocol "show[ed] proper deference to any attorney-client or work product privileges while allowing the government's investigation to proceed.").

In In re Search of 5444 Westheimer Rd. Suite 1570, for instance, the court determined that a filter team protocol which provided for the use of a filter team to review all seized materials for potentially privileged items and provided the privilege holder with an opportunity to challenge the filter team's privilege determinations would "sufficiently protect any potentially privileged documents." 2006 WL 1881370, at *3, *3 n. 5. By contrast, in Heebe v. United States, the court found that a procedure where "the

initial determination that a document was potentially privileged involved the examination of the document by **individuals not on the 'taint team**,' . . . threaten[ed] any privilege contained in those documents." No. CIV.A. 10-3452, 2011 WL 2610946, at *5 (E.D. La. July 1, 2011) (emphasis added). Thus, the use of a filter team to review privileged materials is not, in and of itself, injurious to any privilege held by the movants.

The movant relies heavily on In re Search Warrant Issued June 13, 2019, 942 F.3d 159 (4th Cir. 2019), as amended (Oct. 31, 2019). That case is materially distinguishable from the instant case because:

> 99.8 percent of the 52,000 emails seized by the government were not from Client A, were not sent to Client A, and did not mention Client A's surname; and (2) . . . many of those emails contained privileged information relating to other clients of the Firm, including clients who are potential subjects or targets of government investigations.

Id. at 172. Here, the government has returned (without review) the materials seized from the work areas of in-house counsel and RCF and the movants have not identified any other clients whose privileged communications were seized.

Most of the cases cited by the movants concern the searches of criminal defense attorneys or law firms that performed some criminal defense work. See, e.g., In re Search Warrant Issued June 13, 2019, 942 F.3d at 168 (search of a law firm which had both a civil and criminal practice); United States v. Stewart, 2002 WL 1300059, at *1 (S.D.N.Y. Jan.11, 2002) (search of offices shared by multiple criminal defense attorneys); United States v. Gallego, No. CR1801537001TUCRMBPV, 2018 WL 4257967, at *2 (D. Ariz. Sept. 6, 2018) (search of law office belonging to criminal defense attorney). The concern in those cases – that members of the filter team might have been involved in or could later become involved in the criminal investigation and or prosecution of other clients – is simply not present here. The movants have failed to

establish a likelihood of success on their request that a government filter team not be permitted to review potentially privileged documents.

Nonetheless, the Court has reservations about the initial filter team protocol set forth in the search warrant as applied to the instant case. The filter team protocol requires the filter team to segregate only those communications which are "to/from attorneys" and authorizes the filter team to "provide all communications that do not involve an attorney to the investigative team . . . ." Search Warrant (DE# 4-1 at 8, 8/17/20). Under the filter team protocol set forth in the search warrant, at least some items which are protected by the attorney-client privilege or the work product doctrine may be inadvertently disclosed to the investigative team. This is because the segregation process only requires the filter team to review for possible privilege those items which are "to/from attorneys." Id. As the movants note, the filter team protocol "(1) does not account for the existence of documents subject to the work product doctrine, including compilations of documents prepared by attorneys in anticipation of litigation; and (2) does not account for the existence of communications between non-lawyers reasonably necessary for the transmission of attorney-client communication." Motion at 3.[8] Moreover, the initial filter team protocol as set forth in the search warrant does not in all instances provide the movants with a mechanism for challenging the filter team's

---

[8] The movants also argue that the filter team may not know the names of all the attorneys. Motion at 4. However, that concern is easily remedied by permitting the movants to provide the government with a list of attorneys.

privilege determinations.[9]  See, e.g., United States v. Grant, 2004 WL 1171258, at *1 (approving filter team protocol where the privilege holder would have the opportunity to object to privilege determinations made by the filter team).

The instant case is different from the ordinary search of a business where items protected by the attorney-client or work product doctrine may sometimes be found. The Court notes that the movants anticipate asserting attorney-client privilege or the work product doctrine over a large volume of communications concerning the Delaware litigation. Although the Delaware litigation is a civil action, the underlying transactions are related to the two civil forfeiture actions which the government has brought in this District. If privileged documents are inadvertently disclosed to the investigative/prosecution team, the government may become privy to privileged materials concerning the Delaware litigation. Such a disclosure could prejudice the movants and may result in future efforts by the movants to disqualify the investigative/prosecution team. It is therefore important to ensure that any privileged documents not be seen by the investigative/prosecution team. Allowing the movants to conduct the initial privilege review will protect both the movants and the government from the inadvertent disclosure of privileged materials to the government's investigative/prosecution team.

In sum, the movants have shown a likelihood of success on the merits with

---

[9] For instance, the initial filter team protocol as set forth in the search warrant requires the filter team to obtain a court order if "the filter team decides that any of the communications to/from attorneys are not actually privileged." Search Warrant (DE# 4-1 at 8, 8/17/20). However, the filter team is permitted to release to the investigative/prosecution team "all communications that do not involve an attorney" without providing the movants with an opportunity to assert a privilege. Id.

respect to the initial filter team protocol as applied to the seized items in the instant case. The movants have failed to establish a likelihood of success on their request that a government filter team not be permitted to review potentially privileged documents.

### 2.    Irreparable Harm

The movants argue that they have suffered irreparable harm because the deprivation of a constitutional right – the Sixth Amendment's guarantee of effective assistance of counsel – constitutes an irreparable injury. Motion at 8 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)). The movants note that "'the attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel.'" Id. (quoting In re Search Warrant, 942 F.3d at 174). The movants also argue that they may suffer irreparable harm if privileged information is improperly disclosed. Id. at 10 (stating that "[s]eparate and apart from the deprivation of constitutional rights, irreparable injury may also occur when privileged information is improperly revealed because 'courts cannot always "unring the bell" once the information has been released.'") (quoting Maness v. Meyers, 419 U.S. 449, 460 (1975)).

The government argues that the movants cannot show an irreparable injury because "the Government will not use privileged information, and [privileged information] will not be viewed by anyone investigating Movants." Response at 11. The government also argues that the movants' Sixth Amendment right to effective counsel has not yet materialized and is not implicated in the filter team's review of potentially privileged items because the movants are not under indictment and have only identified materials related to civil legal proceedings. Response at 13 (noting that "'[t]he Sixth

Amendment right to counsel attaches at the first formal proceeding against an accused.'") (quoting Rothgery v. Gillespie Cty., Tex., 554 U.S. 191, 203 (2008)). The government therefore argues that there can be no showing of irreparable harm based on the deprivation of a constitutional right. Id. at 13 (noting that "the attorney-client privilege is not itself a constitutional right"). The government also argues that "[e]ven assuming that there is a 'right' triggered here," the movants cannot show irreparable harm because "the review of privileged documents by disinterested, non-investigative government employees is no different than the review of documents by a special master or the court." Id. at 14.

In their reply, the movants maintain that the Sixth Amendment is implicated here because the government has commenced two civil forfeiture proceedings. Reply at 6 (stating that "[a]lthough '[t]he Government argues that there [are] no adversary proceedings against the [Movants] because forfeiture actions are in rem, rather than in personam [that] argument exalts form over substance.'") (quoting United States v. Bowman, 277 F. Supp. 2d 1239, 1243 (N.D. Ala. 2003)). The movants also cite to several cases supporting the proposition that it is the review of privileged materials that harms the privilege holder. Id. at 6-8. The movants assert that it is "[t]he review of the most sensitive and sacred communications by adversarial prosecutors [that] causes fundamental harm to privilege holders." Id. at 8.

"A showing of irreparable injury is the sine qua non of injunctive relief." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted); Sampson v. Murray, 415 U.S. 61, 88 (1974) (stating that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies"). To show

irreparable harm, "the [movants are] obliged to demonstrate that [they are] likely to suffer such harm in the absence of injunctive relief." In re Search Warrant, 942 F.3d at 171. The movants must make a "clear showing" of "substantial," "actual and imminent" irreparable harm, not "a merely conjectural or hypothetical—threat of future injury." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The Court is satisfied that the movants have shown irreparable harm with respect to the initial privilege review of the seized documents. The filter team protocol as set forth in the search warrant requires the filter team to segregate only those communications which are "to/from attorneys." Search Warrant (DE# 4-1 at 8, 8/17/20). Under the filter team protocol, the filter team "will provide all communications that do not involve an attorney to the investigative team and the investigative team may resume its review." Id. Under the filter team protocol set forth in the search warrant, at least some items which are protected by the attorney-client privilege or the work product doctrine may be disclosed to the investigative team.

The movants suspect that the government's investigation largely mirrors the Delaware litigation. See Motion at 5 (asserting that "[t]he transactions and occurrences at issue in the Delaware case overlap entirely with and are substantively identical to the factual predicate for the grand jury investigation pursuant to which the search warrant issued"). At the September 18, 2020 hearing, counsel for the movants represented to the Court that the movants anticipate a large volume of emails regarding the Delaware litigation will be designated privileged.

The Court finds that the movants have shown irreparable harm with respect to the initial privilege review of the seized documents. Here, the movants are involved in

the Delaware litigation. If the government is permitted to review the materials seized

from the Miami offices under the filter team protocol set forth in the search warrant

(which, as noted above, requires the filter team to review for privilege only those

communications which are "to/from attorneys"), at least some items which are protected

by the attorney-client privilege or the work product doctrine may be inadvertently

disclosed to the investigative team. Moreover, given that the movant anticipates that a

large volume of the materials for which it will assert a privilege concern the Delaware

litigation, it is likely that the inadvertent disclosure will involve matters which directly

relate to the government's proceedings. Although the government has not publicly

disclosed the nature of its investigation, it has two pending civil forfeiture actions in this

District which relate to the Delaware litigation filed by PrivatBank. See Verified

Complaint for Forfeiture in Rem (DE# 1 at ¶1 in Case Nos. 20-cv-23278-MGC and 20-

cv-23279-RNS, 8/6/20) (alleging that "assets that facilitated, were involved in, and are

traceable to an international conspiracy to launder money embezzled and fraudulently

obtained from PrivatBank."). This case is therefore distinguishable from the ordinary

search of a business where items protected by the attorney-client privileged or work

product doctrine may sometimes be found. In this case, any inadvertently disclosed

privileged materials would likely be related to the proceedings initiated by the

government.

 The movants have shown irreparable harm with respect to the initial privilege

review of the seized documents. For the reasons stated in the prior section addressing

likelihood of success on the merits, the movants have not shown irreparable harm as to

the use of a government filter team to review of any documents for which the movants

assert a privilege.

### 3.    Balancing of Harms

The movants assert that the balancing of harms favors the issuance of an injunction. The movants argue that "the irreparable injury to the attorney-client relationships caused by the improper 'filter team' procedure" outweighs any concerns the government may have about any potential delay to the investigation. Motion at 16.

The government asserts that the balancing of harms weighs against the issuance of an injunction. The government argues that allowing the movants to review the seized materials first "will necessarily delay the ongoing investigation" and, if the Court appoints a special master, "it could take months for that process to commence" and "will be incredibly expensive." Response at 15-16.[10]

The movants counter that "[a] private sector special master can review data faster than a single AUSA who has other work." Reply at 12.

The Court finds that the balancing of harms favors the issuance of an injunction. The filter team protocol as set forth in the search warrant which permits the filter team to "provide all communications that do not involve an attorney to the investigative team,"[11] may result in the disclosure of items protected by the attorney-client privilege or work product doctrine, particularly communications related to the Delaware litigation. The government's concerns regarding delay would be exacerbated if privileged materials are disclosed to the investigative/prosecution team and the movants later seek to disqualify

---

[10]  As discussed below, the review process will only take up to 45 days after the documents are provided to the movants.

[11]  Search Warrant (DE# 4-1 at 8, 8/17/20).

the investigative/prosecution team. Even if the movants are ultimately unsuccessful, it would result in a delay in the proceedings.

The movants have shown that the balancing of harms favors the issuance of an injunction regarding the initial privilege review.

### 4.     Public Interest

The movants must also show that "an injunction is in the public interest." In re Search Warrant, 942 F.3d at 182 (citation omitted). The movants argue that "the filter team and its protocol contravene[ ] the public interest" because they "creat[e] appearances of unfairness as to the intrusion into privileged documents and communications of in-house counsel." Motion at 16.

The government asserts that "[t]he public in general likely has little knowledge of or expectation regarding privilege review." Response at 17. It points to the countervailing "public interest in minimizing the delay of criminal investigations and the efficient administration of justice" and notes that if filter teams are not used, the "courts would bear a heavy cost of increased litigation and potential review of voluminous records." Id. at 17-18. In United States v. Grant, for instance, the court noted that "[p]ermitting the Government's privilege team to conduct an initial review of the documents [would] narrow the disputes to be adjudicated and eliminate the time required to review the rulings of the special master or magistrate judge, thus reducing the possibility of delay in the criminal proceedings." No. 04 CR 207BSJ, 2004 WL 1171258, at *3 (S.D.N.Y. May 25, 2004).

In their reply, the movants maintain that while "[a] special master may impose financial costs, . . . the intrusion into privileged documents and communications

imposes far greater harm to the public interest in functional attorney-client relationships, which these privileges uphold and protect." Reply at 10.

The parties have identified important and competing public interests. The Court finds that, in the instant case, the public interest is furthered by applying a modified filter team protocol to the seized items. Under the modified filter team protocol discussed below, the government will, on an ongoing basis, provide the movants with items to review for privilege.[12] The movants will have forty-five (45) days from receipt of the items to assert their privileges. Allowing the movants to conduct a privilege review of the seized materials within a fixed time frame and on an ongoing basis will ensure that the attorney-client privilege and work product doctrine are timely asserted by the privilege holders while at the same time alleviating some of the government's concerns with the delay and expense of using a special master to perform the privilege review at the outset.

The movants have shown that the public interest favors the issuance of an injunction as to the initial privilege review of the seized items.

**B.      Modified Filter Team Protocol**

The Court is concerned that the filter team protocol set forth in the search warrant only requires the filter team to review for possible privilege those items which are "to/from attorneys" and does not include other forms of privilege such as the work product doctrine. Additionally, the movants are presently litigating the Delaware litigation

---

[12] At the September 18, 2020 hearing, the movants advised the Court that they have provided the government with passwords which will reduce the time it would ordinarily take for the government to copy and process electronic media.

which directly relates to the two civil forfeiture actions brought by the government in this District. The movants anticipate that they will be asserting a privilege over a large volume of communications concerning the Delaware litigation. For these reasons, special care should be employed here to protect against the disclosure of privileged items.

The modified protocol will permit the movants to conduct the initial privilege review of all seized items. The movants will provide a privilege log to the government's filter team[13] and the government's filter team will have the opportunity to challenge any privilege designation on the movants' privilege log. The government's filter team will be permitted to review any item on the privilege log in order to formulate a challenge. Although the movants vehemently object to the filter team's review of seized items, the Court finds that it is necessary to allow the government's filter team to review any item listed on the privilege log in order for the government's filter team to make an informed challenge to the movants' privilege designations. For instance, the government's filter team may not be able to effectively raise the crime-fraud exception without reviewing the underlying item. The investigative/prosecution team will be prohibited from receiving any items listed on the privilege log unless agreed to by the parties or the Court/special master has overruled the privilege.

---

[13]  The government's filter team shall be comprised of attorneys and staff from outside the United States Attorney's Office for the Northern District of Ohio's Cleveland branch office. The filter team shall not share a first level supervisor with anyone on the investigative/prosecution team. Any supervisor involved in the filter team review shall be walled off from the underlying investigation.

## <u>CONCLUSION</u>

Having reviewed the applicable filings and the law and having held a hearing on September 18, 2020, it is

ORDERED AND ADJUDGED that the movants' Time-Sensitive Motion of Optima Family Companies, Mordechai Korf, Uriel Laber, and Chaim Shochet to Prohibit Law Enforcement Review of Seized Materials until an Appropriate Procedure for Review of Privileged Items is Established (DE# 4, 8/17/20) is **GRANTED in part and DENIED in part** as follows:

1.      The parties shall adhere to the following modified filter team protocol:

    a.      The government shall process the items and provide them to the movants, on a rolling basis, so that the movants may perform the initial privilege review. Within **forty-five (45) days of receipt** of these items, the movants shall release all non-privileged items to the government's investigative/prosecution team and provide a privilege log to the government's filter team for all items for which they assert a privilege.

    b.      The government's filter team shall be comprised of attorneys and staff from outside the United States Attorney's Office for the Northern District of Ohio's Cleveland branch office. The filter team shall not share a first level supervisor with anyone on the investigative/prosecution team. Any supervisor involved in the filter team review shall be walled off from the underlying investigation.

    c.      The government's filter team is permitted to review any items listed on the movants' privilege log and may challenge any of the movants' privilege designations.

    d.      The government's filter team and the movants' counsel shall confer and attempt to reach a resolution as to those items challenged by the government's filter team.

    e.      If the parties are unable to reach a resolution, the parties shall file a joint notice with the Court. Either the Court or a special master shall rule on the parties' privilege disputes.

    f.      The filter team will provide to the investigative team only those items for which the parties agree or for which the privilege has been overruled.

2.     The portion of this Order that allows for the government filter team review of potentially privileged documents is stayed until **Thursday, October 15, 2020** to provide the movants with an opportunity to appeal this ruling.[14]

DONE AND ORDERED in Chambers at Miami, Florida this **23rd** day of September, 2020.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[14] The stay is only as to the use of a filter team or special master to conduct the initial privilege review. At the September 18, 2020 hearing, after the Court had announced its ruling, the movants requested a stay to provide them with an opportunity to appeal that ruling.