UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-MJ-03278-JJO-1

In Re: Sealed Search Warrant and
Application for a Warrant
_____/

**APPEAL FROM / OBJECTIONS TO [ECF#20] ORDER OF
MAGISTRATE JUDGE AUTHORIZING A FEDERAL PROSECUTOR
TO CONDUCT A "FILTER TEAM" REVIEW OF MATERIALS THAT
THE MOVANTS IDENTIFY AS ATTORNEY-CLIENT PRIVILEGED**

The movants, the Optima Family Companies, Mordechai Korf, Uriel Laber, and Chaim Shochet, hereby appeal from / object to that portion of the Magistrate Judge's Order [ECF#20] permitting the government's use of a "filter team"—consisting of at least one federal prosecutor—to review materials seized during execution of a search warrant that the movants identify as attorney-client privileged.[1] See Rule 4(b), Magistrate Judge Rules of the Southern District of Florida.[2]

---

[1] The Movants include all companies listed in Attachment B.3 to the search warrant, ECF#4-1, with the exception of Optima Specialty Steel, Kentucky Electric Steel, Corey Steel Company, Michigan Seamless Tube, LLC, Georgian Manganese, LLC, Vartisikhe 2005, LLC, Optima Harvard Facility LLC and Optima Stemmons, LLC.

[2] Rule 4(b) provides:

> Review of Case-Dispositive Motions and Prisoner Litigation-28 U.S.C. § 636(b)(1)(B). Any party may object to a Magistrate Judge's proposed findings, recommendations or report under subsections 1(d), (e), and (f) of these rules, supra, within fourteen (14) days after being served with a copy thereof, or within such other time as may be allowed by the Magistrate Judge or District Judge. Such party shall file with the Clerk of the Court, and serve on all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made, the specific basis for such objections, and supporting legal authority.

## FACTUAL BACKGROUND

On July 31, 2020, the government applied for and this Court issued a search warrant to seize items from the offices of the so-called Optima Family Companies located at 200 S. Biscayne Boulevard, Suite 5500, Miami, Florida, 33131. *See* ECF#4-1 (Jul. 31, 2020, Warrant Application).

The warrant contains a section entitled "Filter for Privileged Materials," which provides as follows:

> **Filter for Privileged Materials:** If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of government attorneys and agents is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will review all seized communications and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team and the investigative team may resume its review. <u>If the filter team decides that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party or the crime-fraud exception applies), the filter team must obtain a court order before providing these attorney communications to the investigative team.</u>

ECF#4-1:8 (underlining in original).

The warrant, on its face, would permit a "filter team" of law enforcement attorneys and agents to review *all* of the seized documents, unilaterally determine whether a particular document even implicates the attorney-client or work-product privilege, release to the investigative team (without court intervention) those documents that the filter team unilaterally determines do not implicate a privilege, and then seek a court order before any potentially privileged documents are provided

to the investigative team.  Such a protocol would ensure law enforcement review of privileged materials and would fail to adequately protect these sacred privileges.

The protocol would allow for judicial review only if a communication is clearly sent "to/from attorneys." This limited exception for judicial review would allow a prosecutor (albeit one assigned to a "filter team") to review the substance of the privileged information prior to judicial review; and be underinclusive because the protocol: (1) does not account for the existence of documents subject to the work product doctrine, including compilations of documents prepared by attorneys in anticipation of litigation; and (2) does not account for the existence of communications between non-lawyers reasonably necessary for the transmission of attorney-client communication.[3]

On Tuesday, August 4, 2020, federal agents executed the search warrant at the Miami and Cleveland offices of the Optima Family Companies, affiliated with several Ukrainian nationals, including Ihor Kolomoisky and Gennadiy Boholiubov, as well as Mordechai Korf, Uriel Laber, and Chaim Shochet. For approximately twelve years, at least four attorneys and three paralegals worked "in-house" in the Miami office and provided legal services to many of the so-called Optima Family Companies and individuals.  The agents seized, among other things, legal memo pads, physical documents and computers containing information (e.g., emails with counsel) protected by the attorney-client and work-product privileges.   In that respect, the search was the functional equivalent of a law office search. *See generally* ECF#4-6 (Declaration of attorney Daniela Rost).

---

[3] Rule 26(b)(3)(A) of the Federal Rules of Evidence makes it abundantly clear, with respect to the work product doctrine, that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

On August 17, 2020, after attempting to but failing to reach agreement with the government to modify the warrant's filter team protocol, the movants filed their *Motion to Intervene* [ECF#3] and their *Time-Sensitive Motion Of Optima Family Companies, Mordechai Korf, Uriel Laber, And Chaim Shochet To Prohibit Law Enforcement Review Of Seized Materials Until An Appropriate Procedure For Review Of Privileged Items Is Established* [ECF#4]. They argued that the threat of the government's review of privileged documents is particularly acute because on May 21, 2019, PrivatBank initiated a lawsuit in the Court of Chancery of Delaware against the movants. *See Joint Stock Co. Comm. Bank Privatbank v. Igor Valeryevich Kolomoisky*, Del. Ch., C.A. No. 2019-0377-JRS (May 21, 2019, Compl.). The transactions and occurrences at issue in the Delaware case overlap entirely with and are substantively identical to the factual predicate for the Northern District of Ohio's federal grand jury investigation pursuant to which the search warrant issued. *See* ECF#4-2 (May 21, 2019, Del. Ch. Compl.). Korf, Laber, and Schochet, as well as the relevant Optima Family Companies, have been litigating this Delaware case now for over a year. Since at least May 2019, the movants have been in constant communication with their litigation counsel about the very same facts that underly the federal grand jury investigation.

Because the transactions and occurrences at issue in Delaware overlap with the grand jury investigation, the movants alleged that there is a clear risk that review of the material seized would intrude upon work product privileges, including work product emails and communications exchanged amongst the non-lawyer privilege holders in connection with the civil lawsuit in Delaware; that the government would be exposed to a virtual roadmap to the privilege-holders defenses by reviewing work

product generated as a result of the Delaware action and exchanged amongst lawyers and non-lawyers.[4]

Magistrate Judge O'Sullivan, who had signed the warrant, convened a telephonic hearing on August 19, 2020, and thereafter entered an Order [ECF#10] granting the *Motion to Intervene*. With the agreement of the movants, the Magistrate Judge permitted the seizing agents to "to continue processing the materials as described at the August 19, 2020 status hearing," which meant that the government could arrange to have the seized materials copied / scanned, but could not review the content of any of the seized materials. The Magistrate Judge ordered that "[w]ithin forty-eight (48) hours of a record being processed, the government shall provide a copy to movants' counsel." ECF#10:1-2.

On September 18, 2020, having received and reviewed the government's response [ECF#11], the movant's reply [ECF#12], and the movant's status report [ECF#17], the Magistrate Judge held a Zoom hearing. See *Transcript of Video Teleconference Motion Hearing* [ECF#22]. During the hearing, the movants reiterated their position that, before the government reviewed any of the seized materials, the movants be permitted to identify and prepare a privilege log of those

---

[4] At the hearing on the motion, counsel for the movants proffered, without disagreement that:

> [T]here's going to be a lot of email traffic in context with the ongoing litigation in Delaware, there's a civil case in Delaware that mirrors the government's investigation in Ohio.

> For well over a year, the Freedman firm, the RCF firm [a law firm representing and subletting space from the movants], the Kasowitz firm have been defending the movants in that civil litigation. The government doesn't deny that the government's investigation is a mirror of that civil litigation.

> So there's going to be a large volume of communications between counsel and the Optima movants that are going to be obviously privileged. And those are the ones that we're going to need to identify and segregate.

ECF#22:30-31 (*Transcript of Video Teleconference Motion Hearing*).

materials over which they would assert a privilege; the prosecution team would then have immediate access to materials over which the movants were not asserting privilege.

As to the materials identified on the privilege log, the movants proposed that the Magistrate Judge rule on the privilege assertion without the participation of a so-called "filter" prosecutor. The government proposed that a prosecutor not currently involved in the investigation be permitted to review those materials over which the movants asserted privilege in order to assess the validity of the privilege assertion and, if necessary, oppose the assertion. The government proposed that AUSA O'Shea of the Northern District of Ohio—the same district conducting the grand jury investigation—serve as the filter prosecutor, noting that AUSA O'Shea offices in Akron, whereas the prosecution team offices in Cleveland. ECF#21-22.

The movants suggested that the court did not

> need to decide this today -- if the government believes that for example you, Judge, would be overwhelmed because the volume is too great, and we don't know exactly what that volume will be, normally you would make that decision.
>
> If the government feels they need a representative of the government to participate in trying to convince you that our assertion of privilege is wrong, then you, with your own eyes, with your experience of 30 years plus in this district, you're a former federal prosecutor, I think you're in as good a position as any prosecutor Mr. Bronshtein can suggest.
>
> You're in as good a position as anybody to evaluate our assertion of privilege. Because either way, it's going to end up before you. The filter attorney the government is proposing doesn't get to decide.

ECF#22:36.

6

Insofar as the court was inclined to authorize a filter team, the movants objected to AUSA O'Shea or anyone from the Executive Branch being authorized to review materials over which the movants were asserting privilege, relying on the Fourth Circuit's decision in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) (granting preliminary injunctive relief in identical context). To the extent that the Magistrate Judge would want input from a "filter attorney" who would "advocate for the government, to override [the movants'] assertion of privilege," the movants proposed that the Magistrate Judge "appoint a lawyer, it could be a former federal prosecutor who is no longer with the government, to serve in that in capacity." ECF#22:36-37. That "independent counsel … with input [from the prosecution team] regarding the nature of the government's investigation, would evaluate whether [the movants'] assertion of privilege as to a particular document is valid or not." ECF#22:37. The movants noted that if the government was proposing AUSA O'Shea precisely because he currently had, and in the future would have, no involvement in the investigation, then "if that's what qualifies him to be the filter attorney, so too is any other *former* federal prosecutor who could be named to fill the role that the government proposes to give Mr. O'Shea." ECF#22:38.

After considering the arguments of the parties, the Magistrate Judge entered its Order [ECF#20], granting in part and denying in part the movants' motion. The Magistrate Judge distinguished the Fourth Circuit case as

materially distinguishable from the instant case because:

> 99.8 percent of the 52,000 emails seized by the government were not from Client A, were not sent to Client A, and did not mention Client A's surname; and (2) . . . many of those emails contained privileged information relating to other clients of the Firm, including clients who are potential subjects or targets of government investigations.

> Here, the government has returned (without review) the materials
> seized from the work areas of in-house counsel and RCF [a law firm
> representing and subletting space from the movants] and the movants
> have not identified any other clients whose privileged
> communications were seized.

ECF#20:10 (citation omitted). Accordingly, the Magistrate Judge ordered as
follows:

1. The parties shall adhere to the following modified filter team
protocol:

a. The government shall process the items and provide them to
the movants, on a rolling basis, so that the movants may perform the
initial privilege review. Within **forty-five (45) days of receipt** of
these items, the movants shall release all non-privileged items to the
government's investigative/prosecution team and provide a privilege
log to the government's filter team for all items for which they assert
a privilege.

b. The government's filter team shall be comprised of attorneys
and staff from outside the United States Attorney's Office for the
Northern District of Ohio's Cleveland branch office. The filter team
shall not share a first level supervisor with anyone on the
investigative/prosecution team. Any supervisor involved in the filter
team review shall be walled off from the underlying investigation.

c. The government's filter team is permitted to review any items
listed on the movants' privilege log and may challenge any of the
movants' privilege designations.

d. The government's filter team and the movants' counsel shall
confer and attempt to reach a resolution as to those items challenged
by the government's filter team.

      e. If the parties are unable to reach a resolution, the parties shall file a joint notice with the Court. Either the Court or a special master shall rule on the parties' privilege disputes.

      f. The filter team will provide to the investigative team only those items for which the parties agree or for which the privilege has been overruled.

ECF#20:21 (emphasis in original). At the request of the movants, the Magistrate Judge granted a stay of "that portion of this Order [paragraph 1.b.] that allows for the government filter team review of potentially privileged documents … until **Thursday, October 15, 2020** to provide the movants with an opportunity to appeal this ruling." ECF#20:22 (emphasis in original).

## ARGUMENT

The appointment of a "filter team" consisting of current prosecutors "fail[s] to recognize that an adverse party's review of privileged materials seriously injures the privilege holder." *In re Search Warrant*, 942 F.3d at 175; *see Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960-61 (3d Cir. 1984) (ruling that law firm had demonstrated likelihood of irreparable harm where government seized thousands of files containing privileged information); *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983) (holding that "a communication between an attorney and his client that is protected by the common law attorney-client privilege is also protected from government intrusion by the sixth amendment"); *United States v. Abbell*, 914 F. Supp. 519, 520 (S.D. Fla. 1995) (in criminal prosecution in which large volume of documents and computer generated data was seized from lawyers, special master would be appointed, at government expense, to determine whether documents and data were protected from disclosure because of attorney client, work product, or other applicable privileges).

Separate and apart from the deprivation of constitutional rights, irreparable injury may also occur when privileged information is improperly revealed because "courts cannot always 'unring the bell' once the information has been released." *Maness v. Meyers*, 419 U.S. 449, 460 (1975); *see Blasco*, 702 F.2d at 1329*; In re Grand Jury Proceedings*, 601 F.2d 162, 169 (5th Cir. 1979).

Although there are very few appellate precedents to guide disputes over the use of "filter teams," the decision of the Fourth Circuit in *In re Search Warrant Issued*, 942 F.3d 159, is instructive. "When the pertinent legal principles are properly applied to the unrefuted evidence," it is clear that review by the prosecutorial "filter team" of materials seized from their targets "is injurious." *In re Search Warrant*, 942 F.3d at 175. "And that harm is plainly irreparable, in that the Filter Team's review of those privileged materials cannot be undone," and the relevant Optima Family Companies and individuals "will be irreparably harmed absent an award of injunctive relief against the Filter Team and its Protocol." *In re Search Warrant*, 942 F.3d at 175; *Blasco*, 702 F.2d at 1329.

Federal courts have generally "taken a skeptical view of the Government's use of 'taint teams' as an appropriate method for determining whether seized or subpoenaed records are protected by the attorney-client privilege." *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d, 1027, 1037 (D. Nev. 2006).[5] "[T]aint teams present inevitable, and reasonably foreseeable, risks to privilege." *In re Grand*

---

[5] Although the use of "taint teams" or "filter teams" has been tolerated in limited factual scenarios, the analysis is often performed after the fact, based on lack of evidence of actual prejudice *at trial*. *See, e.g., United States v. Coffman*, 574 F. App'x 541, 564 (6th Cir. 2014) (taint process was reviewed under the invited error doctrine because the defendant agreed to process before it occurred, court made factual finding of crime-fraud exception, and case was argued as to lack of prejudice at trial); *United States v. Warshak*, 631 F.3d 266, 293 (6th Cir. 2010) (government had already reviewed privileged materials, and court's analysis was post-trial, based on lack of evidence of direct or derivative use of privileged information at trial). Only a handful of cases have analyzed the legality of these procedures *a priori*, following an adversarial process conducted at the outset.

*Jury Subpoenas*, 454 F.3d at 523. The government's conflicting interests in both preserving privilege and pursuing the investigation present inherent risks. *See id.* Taint teams "have been implicated in the past in leaks of confidential information to prosecutors." *Id.* (citing *United States v. Noriega,* 764 F. Supp. 1480 (S.D. Fla. 1991)). And even if no leaks occur, the use of walled-off taint teams undermines the appearance of fairness and justice. *See In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994); *United States v. Stewart*, No. 02 CR. 395 JGK, 2002 WL 1300059, at *8 (S.D.N.Y. June 11, 2002). "It is a great leap of faith to expect that members of the general public would believe" that a wall separating members of the taint team from members of the prosecution "would be impenetrable." *In re Search Warrant*, 153 F.R.D. at 59.

Instances in which the government fails to adequately safeguard privileges through a "filter team" or "taint team" continue to occur and have occurred as recently as April 2020. *See, e.g., United States v. Sullivan*, No. CR 17-00104 JMS-KJM, 2020 WL 1815220, at *8 (D. Haw. Apr. 9, 2020) ("[T]he court entrusted the United States with a unique responsibility to ensure that any and all privileged material seized pursuant to the iCloud warrant was not provided to the prosecution team. And in this task, the United States failed."); *United States v. Elbaz*, 396 F. Supp. 3d 583, 589 (D. Md. 2019) (government's filter team improperly disclosed thousands of potentially privileged documents to a prosecution team, which then examined some of the documents); *United States v. Esformes*, No. 16-20549-CR, 2018 WL 5919517, at *20 (S.D. Fla. Nov. 13, 2018) (prosecution team improperly reviewed materials from search before "taint" attorneys had reviewed the materials, despite assertions of defendant's privilege); *United States v. Pearl,* 17-cr-00240-DAP (N.D. Ohio 2018) (ECF## 72, 79, 81) (describing the failures of a filter process involving the same prosecutor's office litigating the instant case); *United States v. Pedersen*, No. 3:12-CR-00431-HA, 2014 WL 3871197, at *27 (D. Or. Aug. 6, 2014)

(prosecutors failed to notify defense or court for months that prosecution team had reviewed target's legal mail); *Noriega*, 764 F. Supp. at 1489 (Noriega's conversations with his defense team were not recognized as such by outside screeners and DEA agents performing review and prosecutors were exposed to privileged conversations).

Moreover, as Judge Boggs writing for the Sixth Circuit aptly explained, a filter team might "have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and . . . some [filter] team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that [filter] teams pose a serious risk to holders of privilege." *In re Grand Jury Subpoenas*, 454 F.3d at 523. A prosecutor who sees an incriminating privileged communication during a filter-team review cannot unsee it. When federal prosecutors review thousands of seized emails, including those indisputably seized from the possession of in-house counsel, the risks are intolerable.

In such circumstances, the Court itself or a special master should review the seized documents to evaluate claims of privilege and any exceptions to privilege. *See Abbell*, 914 F. Supp. at 519-20; *accord Stewart*, 2002 WL 1300059, at *7. In addition to avoiding separation of powers issues, this provides two key safeguards: (1) it protects the attorney-client privilege and guards against exposure to prosecutorial adversaries; and (2) more fundamentally, it protects the clients' Sixth Amendment rights to a fair trial and the effective assistance of counsel, including the assistance of in-house counsel.

For those who rely on their in-house counsel for legal advice — and to the public at large — it surely appears, as the Fourth Circuit recognized, that "the government's fox [has been] left in charge of the [attorney-client] henhouse.'" *In re Search Warrant*, 942 F.3d at 182 (citing *In re Grand Jury Subpoenas*, 454 F.3d at 523); *see also In re Search Warrant for Law Offices Executed on Mar. 19, 1992*, 153

F.R.D. 55, 59 (S.D.N.Y. 1994) ("It is a great leap of faith to expect that members of the general public would believe any . . . wall [between a filter team and a prosecution team] would be impenetrable; this notwithstanding our own trust in the honor of an AUSA.").

The Supreme Court has recognized that "[t]oo much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses." *United States v. Reynolds*, 345 U.S. 1, 8 (1953). As the Supreme Court has subsequently stated, "[o]ur endorsement of the practice of testing proponents' privilege claims through *in camera* review of the allegedly privileged documents has not been without reservation." *United States v. Zolin*, 491 U.S. 554, 570 (1989). For example, "[a] blanket rule allowing *in camera* review as a tool for determining the applicability of the crime-fraud exception, as *Reynolds* suggests, would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." *Id.* at 571. The Supreme Court in *Reynolds* and *Zolin* was concerned about the routine exposure of privileged information to judges *in camera*, let alone "filter prosecutors," whose principal job is to prosecute crimes, not to adjudicate the existence of legal privileges.

It is fundamentally improper for government prosecutors to be permitted to sift through privileged communications to determine the applicable privileges—that is only a role for the court, and only after "some threshold showing that such review is appropriate." *Zolin*, 491 U.S. at 571 "There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *Id.* The government will have to meet the threshold for *in camera* inspection by providing "a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish" lack of privilege. *Id.* at 572. In other

words, if the government has reason to believe that a privilege assertion is invalid, they can move for relief from the court upon making some threshold showing that the privilege assertion is subject to challenge.

## CONCLUSION

To protect the attorney-client privilege (and its work-product corollary), the District Court should vacate that portion of the Magistrate Judge's Order authorizing that documents identified by the movants as privileged may be reviewed by a filter team comprised of prosecutors (or anyone else in the government). The movants submit that the filter team—if one is even necessary at this or a later juncture— should be comprised of persons outside of government.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the movants hereby request a hearing on this motion because of the substantial legal issues raised herein, the importance of the rights at stake, and the utility of discussing the factual nuances of the case in order to adequately inform this Court's exercise of discretion in tailoring an appropriate procedure for segregating privileged documents. Counsel for the movants anticipates that argument on the instant motion should not require more than an hour.

Respectfully submitted,

Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131 / Tel: (305) 371-6421

By:   /s/ Howard M. Srebnick
        Howard M. Srebnick
          HSrebnick@RoyBlack.com
          Florida Bar No. 919063

14

Robert T. Dunlap
  RDunlap@RoyBlack.com
  Florida Bar No. 11950

*Attorneys for the movants Mordechai Korf
and Optima Family Companies*

Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Marc E. Kasowitz
Mark P. Ressler
Ronald R. Rossi
Sarmad M. Khojasteh
Joshua Paul
*Pro Hac Vice*
MKasowitz@kasowitz.com
MRessler@kasowitz.com
RRossi@kasowitz.com
SKhojasteh@kasowitz.com
JPaul@kasowitz.com

*Attorneys for the movant Chaim Shochet*

By:  */s/ Scott A. Srebnick*
      Scott A. Srebnick, P.A.
      201 South Biscayne Boulevard
      Suite 1210
      Miami, FL 33131
      Telephone: (305) 285-9019
      Facsimile: (305) 377-9937
      Scott@srebnicklaw.com
      *Attorney for the movant Uriel Laber*