UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-MJ-03278-O'SULLIVAN

In Re: Sealed Search Warrant and
Application for a Warrant
_____/

## ORDER

THIS MATTER is before the Court on Roche Cyrulnik Freedman LLP's Motion to
Intervene for Limited Relief and an Evidentiary Hearing (DE# 14, 9/17/20).

## BACKGROUND

On September 17, 2020, Roche Cyrulnik Freedman LLP (hereinafter "RCF") filed
the instant Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 14,
9/17/20) (hereinafter "Motion"). The Optima Family Companies, Mordechai Korf, Uriel
Laber, and Chaim Shochet (collectively, the "Optima Intervenors")[1] filed a joinder in the
instant Motion. See Movants' Joinder in [ECF #14] Roche Cyrulnik Freedman LLP's
Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 16, 9/17/20).

On September 18, 2020, the Court held a hearing. See Paperless Minute Entry
(DE# 18, 9/18/20). Following the hearing, the Court granted the Optima Intervenor's
joinder in the instant motion and set a briefing schedule. See Order (DE# 19 at 1,
9/18/20). The Court's Order also required the government to "file under seal the names
and titles of all individuals who participated in the search" and to "provide a copy to the
Court and to [RCF] of the photographs taken during the search." Id. at 2. The Order

_____

[1] The Optima Intervenors were allowed to intervene in this matter on August 19, 2020.
See Order (DE# 10, 8/19/20).

required the government to maintain the photographs under seal until the Court ruled on any asserted privileges. Id.

The government filed under seal a list of the individuals who participated in the search. Sealed Docket Entry (DE# 21, 9/24/20). The government also provided copies of the photographs to the Court and to RCF.

On October 13, 2020, RCF filed a notice with the Court identifying 14 photographs which it deemed protected by either the attorney-client privilege or the work-product doctrine. See Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20). The Court has not yet ruled on RCF's asserted privileges with respect to these photographs.

Pursuant to the Court's briefing schedule, the government filed its response to the instant Motion on October 2, 2020. See United States' Response to Roche Cyrulnik Freedman LLP's Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 23, 10/2/20) (hereinafter "Response"). RCF filed its reply on October 13, 2020. See Reply in Support of Roche Cyrulnik Freedman LLP's Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 26, 10/13/20) (hereinafter "Reply"). The Optima Intervenors joined in the reply. See Movants' Joinder in Roche Cyrulnik Freedman LLP's Reply in Support of Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 27, 10/13/2020).

This matter is ripe for adjudication.

## ANALYSIS

The instant proceedings stem from the government's execution of a search warrant on August 4, 2020 at the Miami offices of some of the Optima Intervenors.

RCF, a law firm, subleases two offices and a cubicle at this location. Motion at 1. RCF is presently representing some of the Optima Companies[2] in a civil action brought by PrivatBank in Delaware.

On August 4, 2020, the government also searched the office space subleased by RCF and seized a box of materials from the office of an RCF attorney. Response at 4. No materials were seized from the second office or the cubicle subleased by RCF. Id.

The government later returned to RCF the box of materials, without review. Response at 4. RCF reviewed the materials and determined that the materials belonged to the Optima Companies. Id. RCF and/or the Optima Companies returned the materials to the government in response to a subpoena issued by the government to the Optima Companies. Hearing Transcript (DE# 22 at 15, 9/29/20) (stating that "in response to a subpoena that [the government] served on Optima, Optima has said that they'll send those documents back to [the government] so that they can be process[ed] like the rest of the documents from the search.").

RCF seeks to intervene in the instant proceedings in order "to square the inconsistencies in the Government's account [of the search], ensure that protected materials are adequately safeguarded, and its client privileges protected." Reply at 3.

---

[2] In this Order, the Court will use the term "Optima Companies" to refer to a group of companies listed in Attachment B.3 to the search warrant, which includes some, but not all, of the Optima Intervenors.

3

RCF initially sought:

> an order (i) directing the government to disclose the names of all agents who participated in the search of RCF's offices, (ii) disqualifying these agents from working on any case related to the Optima Family of Companies, (iii) directing the government to send the only copies of the images it took in RCF's office to the undersigned and the Court, and (iv) scheduling an evidentiary hearing to determine the scope and circumstances of the government's intrusion into RCF's offices.

Motion at 11.

After the filing of the Motion, the Court entered an Order (DE# 19) directing the government to provide to the Court and to RCF a copy of the photographs taken during the search. See Order (DE# 19 at 1, 9/18/20). RCF now seeks an order directing the government to destroy all the photographs taken during the search, whether privileged or not privileged. See Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20) (requesting that "the Court order the Government to destroy all copies of any images taken within RCF's offices").

## A.     Standing

At the outset, the Court notes that "[t]he attorney-client privilege 'belongs solely to the client,' and the client may waive it, either expressly or by implication." Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir.), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994) (quoting In re Von Bulow, 828 F.2d 94, 100-101 (2d Cir. 1987)). "An attorney is required to assert the attorney-client privilege **when the client requests him to do so** and there is a reasonable basis to conclude that the disclosure of information would breach the privilege." In re Grand Jury Proceedings, 831 F.2d 222, 225 n.9 (11th Cir. 1987) (emphasis added). Therefore, if RCF were permitted to

4

intervene in the instant proceedings, it would only be allowed to assert the attorney-client privilege on behalf of its clients and not on its own behalf. Additionally, RCF would not be permitted to seek any remedies on its own behalf for any past violations of the attorney-client privilege. As one Court explained:

> [t]he law firm . . . does not possess the [attorney-client] privilege, and is not inherently entitled to any remedy if the rights of a third party (its client or former client) have been violated. **I[n] other words, the law firm and its attorneys have no standing to seek a remedy for themselves for breach of the attorney-client privilege because the privilege does not belong to them. Even alleged constitutional violations need not be considered or remedied as to a person without standing**. Tribune Co. v. Huffstetler, 489 So.2d 722, 724 (Fla. 1986) ("[T]he courts of this nation have long held that one individual may not claim standing to vindicate the constitutional rights of another.").

MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP, No. 207CV387-FTM-29SPC, 2008 WL 4642835, at *2 (M.D. Fla. Oct. 20, 2008).

The work product doctrine, unlike the attorney-client privilege, belongs to both RCF and its clients. Lesniak v. Geico Gen. Ins. Co., No. 219CV494FTM60MRM, 2020 WL 5878022, at *4 (M.D. Fla. Apr. 17, 2020). Therefore, if RCF were permitted to intervene in the instant proceedings, it would be allowed to assert the work product doctrine on its own behalf and on behalf of its clients.

## B.    Intervention

### i.    Applicability of Rule 24 of the Federal Rules of Civil Procedure

The parties dispute whether Rule 24 of the Federal Rules of Civil Procedure, which governs intervention, applies to the instant Motion. The government argues that Rule 24 applies here. Response at 5 (citing In re Grand Jury Subpoena, 274 F.3d 563, 567-68 (1st Cir. 2001)). RCF maintains that "[c]ourts throughout the country have recognized '[t]here is no provision in the Federal Rules of Criminal Procedure for

intervention by a third party in a criminal proceeding; intervention in civil proceedings is governed by Rule 24 of the Federal Rules of Civil Procedure, which does not apply in a criminal case.'" Reply at 3 (quoting United States v. Rashid, No. 95-7396, 2009 WL 723382, at *3 (E.D. Pa. Mar. 17, 2009) (criminal forfeiture proceeding) (quoting United States v. Kollintzas, 501 F.3d 796, 800 (7th Cir. 2007) (civil garnishment proceeding)).

The case cited by the government involves a motion to intervene in a grand jury proceeding. In re Grand Jury Subpoena, 274 F.3d 563, 567 (1st Cir. 2001) (stating that "[t]he underlying controversy arises out of a subpoena duces tecum issued by a federal grand jury to a corporation, seeking records pertaining to the affairs of a subsidiary."). On appeal, the circuit court noted that the intervenors were properly allowed to intervene under Rule 24(a)(2) because "[c]olorable claims of attorney-client and work product privilege qualify as sufficient interests to ground intervention as of right." Id. at 570.

RCF cites several cases where courts ruled on motions to intervene without reliance on Rule 24. See Reply at 3-4 (citing United States v. Rashid, No. CIV. A. 95-7396, 2009 WL 723382, at *3 (E.D. Pa. Mar. 17, 2009), aff'd, 373 F. App'x 234 (3d Cir. 2010), and aff'd, 373 F. App'x 234 (3d Cir. 2010) (seeking to intervene in criminal forfeiture proceedings)); United States v. Collyard, No. CRIM. 12-0058 SRN, 2013 WL 1346202, at *1 (D. Minn. Apr. 3, 2013) (defendant's former counsel sought to intervene or to appear as amicus curiae at evidentiary hearing on defendant's motion to withdraw guilty plea based on ineffective assistance of counsel); United States v. Carmichael, 342 F.Supp.2d 1070, 1072 (M.D. Ala. 2004) (seeking to intervene in criminal proceeding); United States v. Bergonzi, 216 F.R.D. 487, 492 (N.D. Cal. 2003) (company

6

permitted to intervene in criminal prosecution of former executives to assert its claim of attorney-client privilege and work product protection over certain documents). However, none of those cases involve proceedings such as this one.

The Court's own research has yielded a case where permissive intervention was granted under Rule 24(b) in a proceeding related to a search warrant. In <u>In re Search Warrant</u>, two local television stations were permitted to intervene in order to seek the unsealing of a search warrant and related materials. No. M-3-94-80, 1996 WL 1609166, at *1 n.1 (S.D. Ohio Aug. 20, 1996) (stating that the court was sustaining the "motions to intervene, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, as the applicants' claims ha[d] a question of law in common with the captioned action, and the intervention [would] not unduly delay or prejudice the adjudication of the rights of the existing parties.").

Ultimately, the Court finds that it does not need to determine whether Rule 24 applies to the instant proceedings because whether the Court applies Rule 24 or follows the cases cited by RCF, the result would be the same.

### (a)     Intervention of Right

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention: intervention of right and permissive intervention.

Rule 24(a) confers a right to intervene to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).

7

The Eleventh Circuit employs a four-part test for intervention of right that is drawn directly from Federal Rule of Civil Procedure 24(a)(2). A party may intervene of right by establishing that: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302–03 (11th Cir. 2008). "Once a party establishes all the prerequisites to intervention [of right], the district court has no discretion to deny the motion." United States v. Georgia, 19 F.3d 1388, 1393 (11th Cir. 1994).

The government does not dispute that RCF's motion is timely. Response at 6. Nonetheless, the government argues that RCF cannot meet the remaining requirements of Rule 24(a). With respect to the second requirement, the government argues that "RCF's involvement is duplicative, and it is inappropriate; the best party to protect its own privilege rights is the privilege holder." Response at 7. The government further argues that RCF cannot meet the third requirement because "RCF has no privilege interest at stake, and so the disposition of this matter cannot impede RCF's ability to protect its interests." Id.[3] Lastly, as to the fourth requirement, the government argues that the interests of RCF's client are adequately represented by the privilege holders, the Optima Intervenors. Id.

RCF maintains that it satisfies the requirements of intervention. Reply at 4. With

---

[3] RCF incorrectly states that "the Government generally fails to analyze . . . the third prong." Reply at 5.

respect to the second prong, RCF argues that its concerns are twofold: "the documents reviewed by the Government which relate[ ] to the Optima Family of Companies" and the photographs taken by the government during the search which "inspire new concern—not only for the Optima Family of Companies, but also for two of RCF's current clients and two former clients." Id. RCF maintains that "[b]ecause the Government refuses to destroy these images, and to determine the scope of what was reviewed, RCF requires relief through intervention." Id. at 5.

With respect to the third prong, RCF argues that "the search and filter protocols being addressed by the Court have an unquestionable effect on RCF's ability to protect its interests and those of its clients." Reply at 5.

The Court finds that RCF has not met the requirements of intervention of right under Rule 24(a) with respect to the interests of the Optima Companies. Rule 24(a) "explicitly states that intervention by right is not required if the existing parties adequately represent the intervenor's interest." Catano v. Capuano, No. 18-20223-CIV, 2020 WL 708268, at *3 (S.D. Fla. Feb. 12, 2020). Here, the Optima Companies' interests are already being protected by the Optima Intervenors.

RCF states, without support, that "privileged materials unrelated to the Optima Companies were reviewed and copied by the Government." Reply at 6. RCF does not state, however, that these materials also belonged to RCF's non-Optima clients. To the extent that RCF is referring to materials other than the photographs, RCF may not assert privileges on behalf of unnamed third parties. See MCC Mgmt. of Naples, Inc., 2008 WL 4642835, at *2 (law firm had no standing to assert privilege belonging to third party).

The only mention of RCF's non-Optima clients is with respect to the photographs. Reply at 4 (stating that the "photographs inspire new concern—not only for the Optima Family of Companies, but also for two of RCF's current clients and two former clients"). RCF has identified 14 photographs which it claims are "either privileged work product or attorney client communications." Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 3, 10/13/20).

"The attorney-client privilege belongs solely to the client, and the client may waive it, either expressly or by implication." Cox, 17 F.3d at 1417 (internal quotation marks omitted). Therefore, to the extent RCF seeks to assert the attorney-client privilege on behalf of its non-Optima clients with respect to the photographs, RCF's non-Optima clients shall file a sworn declaration or affidavit asserting the attorney-client privilege and their intent to have RCF represent them in protecting that privilege. See In re Grand Jury Proceedings, 831 F.2d at 225 n.9 (noting that "[a]n attorney is required to assert the attorney-client privilege **when the client requests him to do so** and there is a reasonable basis to conclude that the disclosure of information would breach the privilege.") (emphasis added).

The work product doctrine, unlike the attorney-client privilege belongs to both RCF and the client. Lesniak, 2020 WL 5878022, at *4 (M.D. Fla. Apr. 17, 2020). Therefore, RCF may assert the work product doctrine on its own behalf with respect to any of the 14 photographs that are subject to the privilege.

**(b)    Permissive Intervention**

The government and RCF do not address permissive intervention under 24(b). For the sake of completeness, the Court will address permissive intervention.

Intervention under Rule 24(b) is referred to as "permissive intervention" and is a matter of court discretion. "[E]ven if all the requirements of Rule 24(b) are met, the district court may still deny intervention." Sterling v. Sellers, 817 F. App'x 895, 898 (11th Cir. 2020).

Rule 24(b)(1)(B) provides that upon timely motion anyone may be permitted to intervene in an action where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As previously stated, the instant proceedings concern the privilege review of materials seized during the August 4, 2020 search. To that end, RCF's assertion of the attorney-client privilege and the work product doctrine as to the photographs fall within the scope of the instant proceedings. As discussed in more detail below, RCF's desire to vindicate or redress alleged constitutional rights either on its own behalf or on behalf of its clients – through the identification and disqualification of agents, the destruction of photographs and a hearing inquiry into the scope and circumstances of the search – do not fall within the scope of the instant proceedings.

The Court must also "consider whether the intervention will 'unduly delay or prejudice the adjudication of the original parties' rights.'" Comm'r, Alabama Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2019) (quoting Fed. R. Civ. P. 24(b)(3)). The parties have not raised any delay or prejudice concerns in allowing RCF to intervene and the Court does not believe these concerns would arise if

11

RCF is permitted to intervene in the limited manner outlined by this Order. Therefore, the Court will allow RCF to intervene for the limited purpose of litigating the privileges asserted over the 14 photographs identified in Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20).

### iii.  Intervention Outside of Rule 24

Numerous courts have addressed motions to intervene without reference to Rule 24 in criminal proceedings.[4] "Despite a lack of authority in the criminal rules, motions to intervene in criminal proceedings have been granted in limited circumstances where 'a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case.'" United States v. Collyard, No. CRIM. 12-0058 SRN, 2013 WL 1346202, at *2 (D. Minn. Apr. 3, 2013) (quoting United States v. Carmichael, 342 F.Supp.2d 1070, 1072 (M.D. Ala. 2004)). For instance, "third parties are occasionally allowed to intervene in a criminal trial to challenge a request for the production of documents on the ground of privilege . . . or to protect other rights implicated by a particular proceeding. Carmichael, 342 F. Supp. 2d at 1072; see also United States v. RMI Co., 599 F.2d 1183, 1186 (3d Cir. 1979) (stating that "it is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective

---

[4]  Although the instant case is not a criminal proceeding, RCF has asked that the Court consider its Motion outside of Rule 24. See Reply at 4 (stating that "RCF was not required to set forth any showing under Rule 24. Its original citations represent the governing standards followed by courts analyzing intervention in the criminal context."). As previously stated, the outcome is the same whether the Court applies Rule 24 or not.

orders, and if protection is denied, seek immediate appellate review.").

RCF maintains that it "is entitled to intervene because its constitutional rights were implicated, and its clients' privilege needs to be protected." Reply at 4. RCF cites several cases for the proposition that "a potential violation of constitutional rights is grounds for intervention, not solely an independent action." Id. at 6. However, those cases are either distinguishable from the instant proceedings because they involve the right of the press to assert the public's First Amendment right of access to trial proceedings[5] or intervention was denied because the putative intervener's interests were too far removed from the proceedings before the court.[6]

In Carmichael, a criminal defendant posted a photograph of an undercover agent on a website. 342 F. Supp. 2d at 1071. The undercover agent sought to intervene in the criminal prosecution of the defendant for the purpose of obtaining a court order directing the removal of the photograph from the website. In denying the motion, the Court noted that:

> [The agent]'s rights and interests [were] not implicated by any particular motion, request, or other issue in [the defendant]'s case. Although he assert[ed] that he has a "personal stake in this litigation as it [was] his photograph that was stolen and posted, [the agent] ha[d] not in fact shown

---

[5] See United States v. Aref, 533 F.3d 72, 81 (2d Cir. 2008) ("hold[ing] that a motion to intervene to assert the public's First Amendment right of access to criminal proceedings [was] proper."); In re Associated Press, 162 F.3d 503, 513 (7th Cir. 1998) (addressing the right of the press to intervene in a criminal proceeding to preserve the public's right of access to the courts).

[6] See United States v. Collyard, No. CRIM. 12-0058 SRN, 2013 WL 1346202, at *1 (D. Minn. Apr. 3, 2013) (denying defendant's former attorney's motion to intervene to protect law license in light of defendant's motion to withdraw guilty plea based on ineffective assistance of counsel); United States v. Carmichael, 342 F.Supp.2d 1070, 1072 (M.D. Ala. 2004) (denying undercover agent's motion to intervene in criminal proceeding to require removal of agent's photograph from defendant's website).

that he ha[d] an interest that [would] be affected by [the defendant]'s conviction or acquittal in this criminal case or affected by any proceeding in this criminal case leading up to such. [The agent] may have been personally affected by [the defendant]'s use of his picture on his website, but the website itself [was] not the issue in [the] case. The sole purpose of [the] criminal action [was] the adjudication of [the defendant]'s guilt or innocence.

Id. at 1072.

Similarly, in United States v. Collyard, the defendant's former attorney sought to intervene or to appear as amicus curiae at an evidentiary hearing on the defendant's motion to withdraw a guilty plea based on ineffective assistance of counsel. No. CRIM. 12-0058 SRN, 2013 WL 1346202, at *1 (D. Minn. Apr. 3, 2013). The attorney argued that "he possesse[d] a recognized right in his license to practice law, and intervention [would] help him protect this right." Id. at *2 (internal quotation marks omitted). In denying the attorney's motion to intervene, the court explained that the attorney's interest in his law license was too tangential to the criminal proceedings before the court:

> The Supreme Court has recognized a property interest in the right to practice law sufficient to trigger the protections of the Due Process Clause. Barry v. Barchi, 443 U.S. 55, 64 (1979). However, in the context of Defendant's Motion to Withdraw his Guilty Plea, this Court has no authority with respect to [the attorney]'s law license. **The evidentiary hearing on Defendant's motion is therefore distinguishable from a criminal proceeding in which the press seeks intervention based on denied access, or a proceeding in which a third-party seeks to intervene in order to protect a privileged communication. In those situations, courts possess the authority to enter a ruling in a criminal proceeding that addresses the third party's constitutional or other rights, which are directly impacted.** Because [the attorney]'s right in his license to practice law is not before the Court in this criminal proceeding, and because the right of intervention in criminal proceedings is narrowly circumscribed, his Motion to Intervene is denied.

Id. (emphasis added).

Here too, the constitutional rights RCF seeks to vindicate or redress are too far removed from the proceedings before this Court. RCF's constitutional rights will not be addressed or even implicated by the Court's resolution of any privilege disputes arising from the government's review of materials seized during the August 4, 2020 search. Rather than intervene to protect an interest or right that would be "implicated by the resolution of a particular motion, request, or other issue," <u>Collyard</u>, 2013 WL 1346202, at *2, RCF is seeking to intervene to insert new issues in these proceedings. Absent RCF's intervention, the Court will not be addressing the constitutionality of the search because it is simply not at issue in the instant proceedings which only concern the privilege review of materials obtained during the search. The manner and means of the August 4, 2020 search may later become relevant in a future criminal proceeding, however, at this juncture, the manner and means of the search are simply not relevant to the Court's privilege determinations.

The instant proceedings are limited to privilege determinations over materials seized during the government's August 4, 2020 search. As already noted, only one box of materials was seized from the office space leased by RCF and, it was later determined, that that box of materials belonged to Optima. The Optima Interveners have been granted permission to intervene and are protecting their own interests by actively litigating the disclosure of allegedly privileged materials.

RCF will be permitted to intervene to litigate the privileges asserted with respect to the 14 photographs identified in Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20) because that matter relates to the instant proceedings before this Court.

**C.     The Relief Sought by RCF Falls Mostly Outside the Scope of the Instant Proceedings**

RCF seeks to intervene on its own behalf and on behalf of its clients in order to pursue various remedies against the government. However, and as discussed below, most of the remedies sought by RCF are outside the scope of the instant proceeding.

**i.     Disclosure and Disqualification of Agents**

RCF seeks the disclosure and disqualification of the agents who searched RCF's office space on August 4, 2020. Motion at 6. RCF argues that "[t]he remedy for the government's illegal search and invasion into the attorney client privilege is the disqualification of the agents who accessed RCF's offices." Id.

The government states that it has made clear to RCF that the agents who searched the space subleased by RCF were FBI agents from the Miami office and "had no prior, and will have no future, involvement in the investigation." Response at 8 (citing Government's Exhibit B at 4). Thus, the government argues that it has already voluntarily disqualified these agents from the investigation. Id. The government further argues that it is not required to disclose the names of the agents who participated in the search and that it is refusing to do so "to protect the legitimate privacy interests of its employees." Id. at 8-9, 11. The government states that to the extent, the Court is inclined to grant RCF relief, a general order (without the disclosure of agents' names) would be sufficient. Id. at 11.

In its Reply, RCF states that it seeks the names of the agents who participated in the search as a "means to require the Government honor its representation regarding the disqualification of agents involved in the search of the RCF offices." Reply at 8.

The Court is not inclined to permit RCF to intervene for the purpose of learning

16

the names of the agents who searched RCF's office space and to ensure the continued

exclusion of these agents from the government's investigation. The government has

represented to the Court that the office space subleased by RCF was "searched

exclusively by a team of 'filter agents' from the Miami FBI office, which is not conducting

the investigation." Response at 3 (citing Hoke Decl. ¶ 18). The government has also

represented to the Court that these agents from the Miami FBI office "had no prior, and

will have no future, involvement in the investigation." Id. at 8 (citing Government's

Exhibit B at 4). The government has filed under seal a list of individuals who participated

in the August 4, 2020 search. Sealed Docket Entry (DE# 21, 9/24/20). This list would

include the agents from the Miami FBI office who searched RCF's office space.

Therefore, a record of the agents who searched RCF's offices has been filed with the

Court, albeit under seal. At present, there is no reason to believe the agents from the

Miami FBI office who searched RCF's offices will have any further involvement in the

government's investigation which is being conducted by the Cleveland office.

Accordingly, the Court finds no need to allow RCF to intervene for the purpose of

learning the names of the agents from the Miami FBI office who participated in the

search and to ensure that these agents do not further participate in the government's

investigation.

      **ii.    Destruction of Photographs**

      RCF seeks the destruction of photographs taken of RCF's office space during the

search. See Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant

to Court's September 18, 2020 Order (DE# 25 at 2-3, 10/13/20) (requesting that "the

Court order the Government to destroy all copies of any images taken within RCF's

offices (regardless of whether privilege materials were imaged) because the Government's entry into RCF's offices were in violation of the Fourth Amendment and consequently the Government should not be allowed to keep the fruits of its forbidden search.").

The government argues that it should not be ordered to destroy the photographs it took during the search. Response at 11. The government argues that "[d]eleting the images would destroy evidence and prejudice the Government (and its employees) if RCF does file the type of suit it seems to be contemplating." Id. at n.8.

RCF maintains that the "destruction of such data is not spoliation of evidence, but a measure designed to protect privileged materials . . . . [The government] had no right to enter RCF's offices and thus it should not have a right to keep any images it took while illegally in RCF's offices." Reply at 9.

The Court will adjudicate in a separate Order RCF's privilege assertions with respect to the 14 photographs identified as privileged in Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20). The Court may, although it has not yet made such a determination, order the government to destroy some or all of the 14 photographs if the Court sustains RCF's privilege assertions. However, the Court is not inclined to permit RCF to intervene for the purpose of seeking the destruction of all photographs on the basis of any Fourth Amendment violation and/or fruit of the poisonous tree argument. For the reasons discussed in this Order, RCF's constitutional claims are outside the scope of the instant proceedings.

### iii.     Evidentiary Hearing

RCF seeks "an evidentiary hearing to determine the scope and circumstances of

the government's intrusion into RCF's offices." Motion at 11.

The government insists that an evidentiary hearing is unnecessary because the

"[c]ore facts are not in dispute." Response at 12. With respect to the search of the office

space subleased by RCF, the government maintains that:

> **The only indication agents had that the offices were subleased came**
> **from Daniela Rost**, general counsel to two members of the Optima
> Family of Companies (Felman Trading Americas Inc. and Georgian
> American Alloys Inc.), who arrived during the search. Hoke Decl. ¶ 3. But
> **while she vaguely told agents that there were offices subleased by**
> **lawyers, she did not say that they belonged to RCF, and she did not**
> **say anything about RCF representing Optima**. Hoke Decl. ¶¶ 6-7.
> Moreover, Rost told agents that Felman, which she represented, had
> nothing to do with Optima, and that the other entities "don't do anything,"
> both of which agents knew to be inaccurate. Hoke Decl. ¶¶ 4-5. Based on
> the totality of the information, the agents determined that that
> representation was an insufficient basis to suspend the execution of the
> warrant. Nonetheless, **[the agents] took the precautionary measure of**
> **having the rooms searched exclusively by a team of "filter agents"**
> **from the Miami FBI office, which is not conducting the investigation.**
> Hoke Decl. ¶ 18.

Response at 2-3 (emphasis added).

RCF questions the veracity of the government's account of the search. Reply at 2

(stating that "[i]n order to accept the Government's account of its search of RCF's

offices, one must suspend all disbelief."). RCF argues that the photographs taken during

the search:

> show the government was well aware they were actively searching outside
> counsel's office. The Government took an attorney business card from
> RCF's desk, fixed it to a sign, and tacked it and the sign to a wall in RCF's
> office to help identify the "Freedman office" in pictures. Exhibit A
> (Redacted Image AMO_0482). The Government knew whose office it was;
> it searched it anyway.

Reply at 2.

RCF also maintains that there are numerous factual disputes which necessitate an evidentiary hearing. Reply at 9-12. RCF states that there is a factual dispute concerning whether the government knew the office space belonged to an independent law firm. Id. at 9. RCF further maintains that there is a factual dispute concerning whether the government new that RCF represents some of the Optima Companies in the Delaware litigation. Id. at 10-12. Finally, RCF asserts that "[a]n evidentiary hearing would help determine the true motivations behind the search of RCF's offices, determine who entered those offices, why, and what must be done to protect RCF's clients' privileges." Id. at 11.

RCF cites to United States v. Cuervelo, 949 F.2d 559 (2d Cir. 1991) in support of its position that the Court should hold an evidentiary hearing concerning the search. Reply at 10. However, the procedural posture of Cuervelo is distinguishable from the instant case. Cuervelo was an appeal by a criminal defendant based on the district court's denial of "her motion to dismiss the indictment . . . because of outrageous governmental conduct arising from her alleged sexual relationship with a federal undercover agent." Id. at 561. Because the district court did not hold an evidentiary hearing, the circuit court remanded the case for an evidentiary hearing regarding the conduct alleged by the defendant in her motion. Id. at 569.

RCF also cites United States v. Koschtschuk, No. 09-CR-0096 SM, 2011 WL 867569, at *1 (W.D.N.Y. Mar. 10, 2011). Reply at 10 n. 2. Again, Koschtschuk is distinguishable from the instant case because it involves motions filed by the defendants in a criminal proceeding. These cases stand for the unremarkable

proposition that courts should hold evidentiary hearings to resolve factual disputes. Here, RCF must show that it should be permitted to intervene for the purpose of participating in an evidentiary hearing, not just that there are factual disputes between RCF and the government concerning the August 4, 2020 search.

The Court is not inclined to allow RCF to intervene for the purpose of holding an evidentiary hearing on how and why RCF's office space was searched. The instant proceedings concern the government's review of materials seized during the August 4, 2020 search. The instant proceedings concern the attorney-client privilege and the work product doctrine. How or why RCF's offices were searched is not germane to the privileges asserted or the Court's adjudication of those privileges.

**D.      Limited Scope of Intervention**

For the reasons stated above, the Court will permit RCF to intervene in the instant proceedings for the limited purpose of litigating the privileges asserted over the 14 photographs identified in Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20). RCF will not be permitted to intervene in the instant proceedings to obtain the names of the agents who searched RCF's office space, to require the government to destroy all photographs taken during the search of RCF's office space, to participate in an evidentiary hearing concerning the search or to assert any constitutional rights.

<u>**CONCLUSION**</u>

Based on the foregoing, it is

ORDERED AND ADJUDGED that Roche Cyrulnik Freedman LLP's Motion to Intervene for Limited Relief and an Evidentiary Hearing (DE# 14, 9/17/20) is **GRANTED**

**in part and DENIED in part**. RCF is permitted to intervene in the instant proceedings for the limited purpose of litigating the privileges asserted over the 14 photographs identified in Roche Cyrulnik Freedman LLP's Notice Regarding Photographs Pursuant to Court's September 18, 2020 Order (DE# 25 at 2, 10/13/20).

DONE AND ORDERED in Chambers at Miami, Florida this 26th day of October, 2020.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE